

# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-13-00066-CR
### NO. 02-13-00067-CR

MARK MABRY                                                     APPELLANT

V.

THE STATE OF TEXAS                                                  STATE

----------

FROM THE 362ND DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. F-2011-1709-D, F-2011-1710-D

----------

## MEMORANDUM OPINION[1]

----------

## I. INTRODUCTION

Appellant Mark Mabry appeals his convictions for misdemeanor driving while intoxicated and for accident involving personal injury.[2] In four points, Mabry

---

[1]*See* Tex. R. App. P. 47.4.

[2]The trial court's judgment reflects that a jury found Mabry guilty under section 550.021 of the Texas Transportation Code. *See* Tex. Transp. Code. Ann.

argues that he received ineffective assistance of counsel at trial, that the jury charge contained multiple errors, and that the evidence is legally insufficient to support his conviction. We will affirm.

## II. BACKGROUND

As Bob Tewksbury drove home from work in the late evening of May 5, 2011, he entered the intersection of Highway 114 and Interstate 35 West. Tewksbury had a green light. There, Mabry illegally turned his truck into Tewksbury, striking Tewksbury's car between the driver's side front and rear doors. Tewksbury's vehicle spun into a nearby pillar supporting the Interstate 35 overpass. By Tewksbury's account, Mabry approached him and asked him if he was "okay." Tewksbury responded, "[N]o, it seems like I'm bleeding pretty bad[ly]." And then Mabry abruptly left without saying anything further, offering any assistance, or providing any information to Tewksbury.

---

§ 550.021 (West 2011). This statute is titled "Accident Involving Personal Injury or Death." *Id.* Reviewing courts, however, routinely refer to the offense under section 550.021 as a "failure to stop and render aid." *Huffman v. State*, 267 S.W.3d 902, 904 (Tex. Crim. App. 2008); *see also Delacruz v. State*, No. 02-13-00048-CR, 2014 WL 1389543, at *1 (Tex. App.—Fort Worth Apr. 10, 2014, no pet.) (mem. op, not designated for publication) ("The trial court additionally convicted Delacruz of failure to stop and render aid under transportation code section 550.021(c)(2)."). This is so because the statute instructs what an operator of a vehicle involved in an accident that is reasonably likely to have caused injury or death to a person must do—stop and render aid. *See Huffman*, 267 S.W.3d at 908 ("[W]e have held that a separate prosecution for *failure to stop and render aid* can occur for each individual injured in the accident whom the defendant fails to aid.") (emphasis added).

Almost immediately, Charles Jones, who was traveling in his vehicle behind Tewksbury and had witnessed the wreck, stopped his car to assist. As he dialed 911, Jones witnessed Mabry walk over to Tewksbury. By the time Jones exited his vehicle and went to check on Tewksbury, Mabry had begun walking off toward a nearby Valero gas station, which by all accounts is more than 100 yards away from the area of the wreck. Jones spoke with Tewksbury, who was pinned in his vehicle, and then called Tewksbury's wife. According to Jones, Tewksbury had blood on his face, neck, and arm. Jones believed that Tewksbury needed medical assistance. Jones waited for police to arrive and gave his statement. He never again saw Mabry.

Justin Police Department Officer Darren Watson responded to 911's dispatch. Upon arriving at the scene, he witnessed Mabry's truck with front-end damage and Tewksbury's vehicle, which from what he "could tell . . . looked like it had been struck in the driver's side by [Mabry's truck]." Northlake Police Department Officer Kevin Ertle, who had also responded to the 911 dispatch, informed Watson that witnesses had seen Mabry leave the area on foot in the direction of the Valero gas station. Watson proceeded to Valero in search of Mabry. After speaking with two clerks at Valero who told Watson they had not seen a person matching Mabry's description, Watson exited Valero to continue his search. As he was attempting to leave, another Valero employee flagged him down and said that she had seen a person matching Mabry's description walk out into an adjacent field. Watson testified that he drove his patrol vehicle

3

around to the field, exited, and walked out into it. Watson described the field as being forty yards farther from the wreck than the Valero. He also testified that the field was dense with brush: "[I]t was at least waist-high brush and very thick."

By Watson's account, the field was also without lighting. After walking an additional forty yards into the field, he found Mabry "sitting on the ground Indian style, legs folded and crossed, sitting in the middle of [the] brush with a 12-pack of beer sitting right in front of his feet." Mabry also had a cellphone. Using a trial prop, Watson diagramed for the jury the distance from the wreck to the field. A video from Watson's in-car camera was also played for the jury demonstrating these events.

Immediately after discovering Mabry, Watson said that he ordered him to his feet. Watson had to repeat the command. After handcuffing him and patting him down, Watson asked Mabry if he was the driver of the truck involved in the wreck. Mabry replied, "[N]o comment." Watson transported Mabry back to the location of the wreck. Watson testified that based on his investigation, he concluded that Mabry had left the scene; did not appear as though he had attempted to "get help"; and that it was Watson, not Mabry, who returned Mabry to the scene of the accident.

Ertle testified that he responded to a dispatch involving a "major accident" and that he had assigned Watson the task of finding Mabry because Mabry was nowhere to be found. When Watson returned with Mabry, Ertle smelled the odor of an alcoholic beverage emanating from him. According to Ertle, Mabry was

4

"thick-tongued" and slurred his speech. He also had "drooping" eyes. Ertle conducted standard field-sobriety tests on Mabry and determined that he was intoxicated. When Ertle asked Mabry if the truck belonged to him, Mabry acknowledged that it did, but when Ertle asked if he had been involved in the collision, Mabry responded, "[N]o comment." Ertle testified that he questioned Mabry about having left the scene of the accident and that Mabry's responses led him to conclude that Mabry had purposely attempted to elude the police by hiding in the field. Ertle also said that it was his opinion that Mabry had attempted to avoid responsibility for the accident. The State played a video of a portion of the encounter between Ertle and Mabry for the jury, and Ertle can be heard asking Mabry if he was hoping he would not be found, to which Mabry can be heard replying, "I'm not stupid." The State also introduced evidence that no calls to 911 originated from the cellphone that Mabry had on him when Watson found him. The jury returned verdicts of guilty of misdemeanor driving while intoxicated and guilty of accident involving personal injury and, after finding two enhancement paragraphs true, assessed punishment at 180 days in county jail for the misdemeanor driving while intoxicated and life in prison for the accident involving personal injury. The trial court entered judgment accordingly, and this appeal followed.

### III. DISCUSSION

#### A. Ineffective Assistance

In his first point, Mabry argues that his trial counsel rendered ineffective assistance because he did not object to comments made by the prosecutor during jury voir dire, which Mabry claims alluded to his prior felony convictions. Mabry argues that not only did trial counsel fail to object to these comments, but he also emphasized the prosecutor's comments in his follow-up questioning. We conclude that the record before us is insufficient to demonstrate that his trial counsel's representation fell below the standard of prevailing professional norms.

To establish ineffective assistance of counsel, an appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 812–13 (Tex. Crim. App. 1999). The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that

6

counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001)). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Salinas*, 163 S.W.3d at 740 (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

This case demonstrates the "inadequacies inherent in evaluating ineffective assistance claims on direct appeal." *See Patterson v. State*, 46 S.W.3d 294, 306 (Tex. App.—Fort Worth 2001, no pet.). Mabry did not object to the complained-of comments when they were made, nor did he file a motion for new trial; thus, he never specifically argued that his trial counsel was ineffective. Consequently, there is no record of any kind of hearing at which any alleged ineffectiveness was explored. The record does not reflect trial counsel's reasons for doing or not doing the things of which Mabry complains, and we will not speculate about trial counsel's complained-of acts or omissions. Further, we

7

cannot conclude that this is one of those rare cases in which the challenged conduct was "so outrageous that no competent attorney would have engaged in it." *See Goodspeed v. State*, 187 S.W.3d 390, 392 (Tex. Crim. App. 2005) (quoting *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001), *cert. denied*, 537 U.S. 1195 (2003)). Accordingly, based on this record, and in light of the strong presumption of reasonable professional assistance by trial counsel, we cannot conclude that Mabry met his burden of showing by a preponderance of the evidence that his trial counsel's representation fell below the standard of prevailing professional norms. *See Strickland*, 466 U.S. at 687–88, 104 S. Ct. at 2064–65; *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 62–63. We overrule Mabry's first point.

## B.  Alternative Methods of Committing the Offense

In his second point, Mabry argues that the trial court erred by including the three statutory "alternative ways" for committing the offense of "failure to stop and render aid" in the jury charge and that this was error because the evidence at trial did not raise all three of these alternatives. *See Huffman*, 267 S.W.3d at 908. We disagree.

### 1.  The Statute

The statute that makes the failure to stop and render aid a criminal offense after a driver has been in an accident that results in an injury or death to a person provides that:

8

(a)     The operator of a vehicle involved in an accident resulting in injury to or death of a person shall:

> (1)     immediately stop the vehicle at the scene of the accident or as close to the scene as possible;
>
> (2)     immediately return to the scene of the accident if the vehicle is not stopped at the scene of the accident; and
>
> (3)     remain at the scene of the accident until the operator complies with the requirements of Section 550.023.

(b)     An operator of a vehicle required to stop the vehicle by Subsection (a) shall do so without obstructing traffic more than is necessary.

(c)     A person commits an offense if the person does not stop or does not comply with the requirements of this section.

*See* Act of May 3, 2007, 80th Leg., R.S., ch. 97, 2007 Tex. Gen. Laws 105 (amended 2013) (current version at Tex. Transp. Code Ann. § 550.021.)[3]

## 2.     Application of Caselaw to Statute

Mabry argues that the State did not introduce evidence of subsections (1) and (2) to section 550.021(a), respectively the failure to stop and the failure to return, because, according to Mabry's interpretation of the evidence introduced at trial, the evidence demonstrates that Mabry had no choice but to stop because the wreck left his vehicle incapacitated immediately upon collision.  Thus, Mabry argues that the language of subsections (1) and (2) to section 550.021(a) should not have been included in the jury charge.

---

[3]The accident occurred before the current version of section 550.021(a) was enacted in 2013; thus, the version of section 550.021(a) that was in effect at the time of the accident applies in this appeal.

In support of his argument, Mabry asks this court to combine the majority's holding in *Huffman* with Judge Meyers's concurring opinion in *Huffman* to build a proposition of law that when a statute allows for alternative means of committing an offense but the evidence at trial does not support some of those means, then those means should not be included in the jury charge. 267 S.W.3d at 909. But such a proposition does not accurately reflect either the majority's opinion in *Huffman* or Judge Meyers's concurrence. Judge Meyers reasoned that section 550.021(a) contained one method of committing an offense—"failing to stop." Judge Meyers would have treated the remainder of the subsections in Section 550.021(a) as "defense issues" which a defendant is free to "present evidence" of. Without such evidence, effectively mitigating one's failure to stop, Judge Meyers reasoned that the related statutory language should not be included in the jury charge. *See Huffman*, 267 S.W.3d at 910 (Meyers, J., concurring).

But the majority in *Huffman* reasoned that section 550.021(a) simply contained "alternate methods of committing the same offense" and that a jury charge that contains all three methods in the disjunctive does not violate an appellant's right to a unanimous verdict regardless of whether evidence at trial supported all three methods of violating the statute. *See id.* at 909 ("[W]e hold that 'failing to stop,' 'failing to return,' and 'failing to remain' are simply alternate methods of committing the same offense.") We decline Mabry's invitation to expand the law. Following *Huffman*, we conclude and hold that the trial court did not err by including the "alternate methods" for violating section 550.021(a) in the

10

jury charge, and we overrule Mabry's second point. *See id.* ("[T]he jury charge did not violate appellant's right to a unanimous verdict.").

### C.    Jury Charge Regarding Mabry's Failure to Show License

In his third point, Mabry argues that the trial court erred by instructing the jury that it could convict him under the theory that he failed to show his operator's license to "any person" without the State having to carry its burden that the license was "requested and available" as section 550.023 dictates.[4]   Mabry argues that this instruction confused the jury and was not supported by the evidence; thus, Mabry argues that he was egregiously harmed.  *See Guevara v.*

---

[4]One of the manners in which a person can violate section 550.021, is to fail to comply with section 550.023.  Section 550.023 reads:

> The operator of a vehicle involved in an accident resulting in the injury or death of a person or damage to a vehicle that is driven or attended by a person shall:
>
> (1)    give the operator's name and address, the registration number of the vehicle the operator was driving, and the name of the operator's motor vehicle liability insurer to any person injured or the operator or occupant of or person attending a vehicle involved in the collision;
>
> (2)    if requested and available, show the operator's driver's license to a person described by Subdivision (1); and
>
> (3)    provide any person injured in the accident reasonable assistance, including transporting or making arrangements for transporting the person to a physician or hospital for medical treatment if it is apparent that treatment is necessary, or if the injured person requests the transportation.

Tex. Transp. Code Ann. § 550.023 (West 2001).

*State*, 152 S.W.3d 45, 54 (Tex. Crim. App. 2004) ("It is settled law in Texas that error in a criminal jury charge is reviewed under Article 36.19 of the Code of Criminal Procedure as interpreted by this Court in *Almanza*.").

The State counters by arguing that the evidence at trial established that Mabry did not comply with two subsections of section 550.023 that do not involve showing his operator's license; thus, the State argues that Mabry was not harmed by the inclusion of an instruction that he simply did not show his license to any person.

The indictment charged Mabry, in the disjunctive, with the then three methods of violating section 550.021(a).[5] The indictment, in charging Mabry with violating section 550.021(a)(3), alleged that he failed to remain at the scene and alleged, in the disjunctive, that Mabry failed to provide any of the information or aid required by section 550.023. The indictment, however, in its allegation of violating subsection 550.023(2), simply stated that Mabry "failed to show [his] operator's license to any person" and did not restrict this requirement, as the statute does, to the fact that the license must be requested and available or that the license must only be shown to the injured person or a person attending a vehicle involved in the collision. *See* Tex. Transp. Code Ann. § 550.023(2).

---

[5]The latest version of this statute contains a fourth method for committing this offense, namely that operator of a vehicle "immediately determine whether a . . . person requires aid." *See* Tex. Transp. Code Ann. § 550.021(a)(3).

12

Here, the jury charge, in the abstract portion, limited the duty to produce a driver's license to whether the license was requested and available but broadly provided that the license must be shown without stating to whom it must be shown. The application paragraph reverted to the language used in the indictment, which excluded the "requested and available" language and mandated production of the license to "any person."

No one disputes that Mabry did not seek to quash the indictment, object to the jury charge, or request a specific charge raising the argument he advances on appeal. Mabry now argues for the first time that the trial court erred by charging the jury that he could be found guilty under section 550.021(a)(3) if he failed to show his license to "any person" and by failing to require the State to show that Mabry's license was requested and available. We will assume without deciding that the trial court erred by submitting the complained-of instruction to the jury. Because Mabry's argument is raised for the first time on appeal, we are bound by the egregious-error review mandated by the court of criminal appeals.

All alleged jury charge error must be considered on appellate review, regardless of preservation in the trial court, but whether the error was preserved determines the degree of harm required for reversal. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Unpreserved charge error, like in this case, warrants reversal only when the error resulted in egregious harm. *Pickens v. State*, 165 S.W.3d 675, 680 (Tex. Crim. App. 2005); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim.

13

Proc. Ann. art. 36.19 (West 2006). The appropriate inquiry for egregious harm is a fact-specific one that must be performed on a case-by-case basis. *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). This egregious-harm standard applies even if the trial court erred by instructing the jury on the law applicable to the case as required by article 36.14 and even if an erroneous legal theory is submitted to the jury. Tex. Code Crim. Proc. Ann. art. 36.14 (West 2007), art. 36.19; *Guevara*, 152 S.W.3d at 54; *Bluitt v. State*, 137 S.W.3d 51, 53 (Tex. Crim. App. 2004).

In making an egregious-harm determination, "the actual degree of harm must be assayed in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171; *see also Gelinas v. State*, 398 S.W.3d 703, 705–06 (Tex. Crim. App. 2013). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (*citing Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

Mabry asserts that he was egregiously harmed because "[i]t is very possible that the jury did convict appellant because he failed to show his license to any person as the charge allowed." But a conviction under section

14

550.021(a)(3) is supportable if the driver does not remain at the scene and does not provide any of the information or aid required by section 550.023. *See Morris v. State*, 786 S.W.2d 451, 456–57 (Tex. App.—Dallas 1990, pet. ref'd). Here, the jury could have found Mabry guilty of this offense if Mabry failed to remain at the scene until he provided the injured person reasonable assistance. *See* Tex. Transp. Code Ann. § 550.021(a)(3), .023(3).

The evidence at trial showed that Mabry approached the injured person, Tewksbury, after the accident and asked Tewksbury if he was okay. Tewksbury said he was not okay, but Mabry left and walked to a gas station that was more than 100 feet from the accident site. Tewksbury was pinned in his car and had blood on his face, neck, and arm. A witness to the accident believed Tewksbury needed medical assistance and told the dispatcher to call an ambulance for Tewksbury. Mabry did not give Tewksbury any of the information required by section 550.023(1), did not offer to assist Tewksbury, and did not return to the accident site until forced to do so by a police officer who found him sitting in tall grass beside the gas station with a twelve-pack of beer. Further, Mabry never called for help even though he had a cellphone.

The indictment charged Mabry with violating section 550.021(a), including section 550.021(a)(3), and alleged his failure to remain at the scene and provide Tewksbury with reasonable assistance when it was apparent that treatment was necessary. The charge, in the abstract portion and the application paragraph, also allowed conviction for the failure to remain at the scene and provide

15

reasonable assistance to Tewksbury when it was apparent that he needed medical treatment. The State argued to the jury that Mabry left the scene of the accident even though he knew Tewksbury was injured, and the State asserted that a crime occurred because Mabry left and failed to call for help. The State further stressed that even though Mabry was found with a cellphone and even though he knew Tewksbury needed help, Mabry left the scene and never called the police.

The jury, therefore, was authorized to convict Mabry of a violation of section 550.021(a)(3) (failure to remain at the scene and provide reasonable assistance required by section 550.023(3)) without reference to any errors in the charge regarding Mabry's failure to produce the information required by section 550.023(2). Any assumed error in the wording of the information required to be provided under section 550.023(2) did not deny Mabry a fair and impartial trial and was not calculated to injure his rights because the jury could have convicted Mabry under an alternative theory of culpability unrelated to the alleged jury-charge error. Jury unanimity is required on the elements of an offense but is not required on alternative modes or means of commission. *See Sanchez v. State*, 376 S.W.3d 767, 775–76 (Tex. Crim. App. 2012) (concluding preserved error in jury charge, which allowed jury to find appellant guilty of *actus reus* of murder by causing death by unknown manner and means, not harmful because "the jury could have convicted appellant for murder without being unanimous in its determination as to the manner or means of death"); *Pizzo v. State*, 235 S.W.3d

16

711, 714 (Tex. Crim. App. 2007) (requiring jury unanimity on elements of offense, i.e., *actus reus*, but not on alternative means of committing offense). *See generally* Tex. Code Crim. Proc. Ann. art. 36.19. The alternative methods of violating section 550.021(a) are not separate elements of a single offense but, rather, are alternative modes or means of commission; thus, the jury's general guilty verdict may be upheld if supportable on any of the alternative modes or means of commission. *Sanchez*, 376 S.W.3d at 775; *Rivera v. State*, 12 S.W.3d 572, 577 (Tex. App.—San Antonio 2000, no pet.) (holding no egregious harm shown when evidence clearly supported defendant's guilt under alternative theory unaffected by erroneous portion of charge, State relied on alternative theory for conviction, and jury's verdict likely based on alternative theory). Thus, even assuming error in the jury charge, the jury's verdict was supported by a properly submitted alternative method of violating section 550.021. We therefore overrule Mabry's third issue.

### D.    The Evidence is Legally Sufficient to Support Conviction

In his fourth issue, Mabry argues that the evidence is legally insufficient to support his conviction. Mabry's specific argument is that the field in which Watson found him was the "scene" of the accident as contemplated by section 550.021. We disagree.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential

elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013).

This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Blackman v. State*, 350 S.W.3d 588, 595 (Tex. Crim. App. 2011).

The trier of fact is the sole judge of the weight and credibility of the evidence. *See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Winfrey*, 393 S.W.3d at 768. Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder. *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010). Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict. *Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013). We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360.

We measure the sufficiency of the evidence by the elements of the offense as defined by the hypothetically correct jury charge for the case, not the charge actually given. *Byrd v. State*, 336 S.W.3d 242, 246 (Tex. Crim. App. 2011) (citing

18

*Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997)); *see Crabtree v. State*, 389 S.W.3d 820, 824 (Tex. Crim. App. 2012) ("The essential elements of the crime are determined by state law.").

Relying on *Sheldon v. State* from our sister court, Mabry asks this court to interpret the term "scene" found in section 550.021 as including the field where he sat down with his beer, some 140 to 190 yards away from the point where he crashed his truck into Tewksbury's vehicle. 100 S.W.3d 497, 499 (Tex. App.—Austin 2003, pet. ref'd). Armed with this definition of "scene," Mabry argues that the evidence is legally insufficient to support his conviction because, according to Mabry, he remained at the scene.

While it is true that the *Sheldon* court concluded that "scene" is not defined by the statute, the *Sheldon* court held that the term should be "understood by a person of ordinary intelligence and cannot be considered vague and indefinite." *Id.* at 500. Mabry does not cite any authority for his proposition that a person of ordinary intelligence would understand the term "scene" as including a field some 140 to 190 yards away from the wreck—a field in which he secreted himself after leaving Tewksbury pinned in his car bleeding. We also cannot find any such authority.

Mabry's argument also impliedly asks us to re-evaluate the weight and credibility of the evidence and to substitute our judgment for that of the factfinder. Indeed, two officers and an eyewitness all testified that Mabry had left the scene of the accident. Ertle specifically testified that Mabry had purposely attempted to

19

elude the police by hiding in the field and that it was his opinion that Mabry had attempted to avoid responsibility for the accident. The State also played a video of Watson's pursuit of Mabry into the field, and the State had Watson diagram where he found Mabry in relation to where Mabry's truck struck Tewksbury's vehicle. The reasonable inference from the cumulative force of this evidence is that not only did Mabry in fact leave the "scene" of the accident, he desired not to be discovered.

More directly, when viewed in the light most favorable to the jury's verdict, and as compared to a hypothetically correct jury charge, the evidence at trial demonstrated that after colliding his truck into Tewksbury's vehicle and after learning that Tewksbury was injured and bleeding, Mabry left the scene of the accident and hid himself in a field. And despite having a cellphone on his person, Mabry did not attempt to aid Tewksbury, who evidently needed medical attention. We hold that the evidence legally supports Mabry's conviction. *Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Temple*, 390 S.W.3d at 360. We overrule Mabry's fourth point.

## IV. CONCLUSION

Having overruled Mabry's four points on appeal, we affirm the trial court's judgments.

/s/ Bill Meier

BILL MEIER
JUSTICE

PANEL:  MCCOY, MEIER, and GABRIEL, JJ.

MCCOY, J., concurs without opinion.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  September 11, 2014

21