

# IN THE
# TENTH COURT OF APPEALS

### No. 10-19-00039-CR

**NATHAN DANIELE AYERS,**

                                                            **Appellant**

 **v.**

**THE STATE OF TEXAS,**

                                                            **Appellee**


**From the 85th District Court**
**Brazos County, Texas**
**Trial Court No. 18-01443-CRF-85**


## MEMORANDUM  OPINION


Pursuant to a plea agreement, Appellant Nathan Daniele Ayers pleaded guilty to

the second-degree felony offense of possession of a controlled substance, cocaine, in an

amount of four grams or more but less than 200 grams, and the trial court assessed his

punishment at ten years' imprisonment.  Ayers appeals.  In two issues, Ayers contends:

(1) the trial court abused its discretion in denying his motion to suppress, and (2) the trial

court's judgment should be reformed to reflect the pretrial jail time credit to which he is entitled. We will affirm as modified.

## Background

Ayers filed a motion to suppress the evidence against him in this case. During the motion-to-suppress hearing, Ayers argued that the evidence should be suppressed because the arresting officer lacked reasonable suspicion to conduct the traffic stop that led to Ayers's arrest.

The arresting officer, Jason Summers of the College Station Police Department, testified during the motion-to-suppress hearing that he was on patrol the night of January 14, 2018. At approximately 9:56 p.m., Summers was in his patrol car at a stoplight facing east on Dominik Drive when Ayers's vehicle, traveling northbound on George Bush Drive East, passed through the intersection in front of Summers. Summers observed that there were no lights illuminating the rear license plate of Ayers's vehicle and conducted a traffic stop.

The State offered, and the trial court admitted as evidence, two exhibits that Summers explained were still photos taken from his in-car camera video of the stop. Summers testified that the images showed light coming from the headlights and taillights of Ayers's vehicle but no illumination in the area where the license plate was located. Summers further explained that he had noticed Ayers's vehicle earlier that same night

and had noted the vehicle's malfunctioning license plate light. Because he was on foot patrol, Summers was unable to stop the vehicle at that time.

On cross-examination, Summers acknowledged that he had not been within fifty feet of Ayers's vehicle while driving before conducting the traffic stop. The defense offered into evidence another portion of Summers's in-car video of the stop,[1] and Summers agreed that the license plate appeared to be illuminated in the video. But on redirect examination, Summers testified that an extraneous light source such as the headlamps of his patrol vehicle or a streetlight could have illuminated the reflective material of the license plate, making it seem illuminated in the video. Summers also noted that Ayers turned off his vehicle during a portion of the stop, and as a result, the vehicle's lights also turned off. Summers testified that the license plate could still be seen even with the vehicle lights off because the patrol car's lights reflected off the license plate.

Ayers called the owner of the vehicle to testify at the motion-to-suppress hearing. She testified that Ayers was driving at the time of the stop and that when Ayers was stopped, he called her to tell her that he had been pulled over. She was close by and walked over to Ayers's location. She told the officers that the vehicle was hers, and the police released it to her. She testified that after she drove the vehicle back to her nearby

---

[1] The trial court admitted the entire video as evidence but clarified that it was considering only the limited portion of the video offered by the defense.

apartment that night, she took a photograph to show that the rear license plate light was properly functioning. The photograph was admitted into evidence.

At the conclusion of the suppression hearing, the trial court denied Ayers's motion. The trial court subsequently made findings of fact and conclusions of law.

## Motion to Suppress

In his first issue, Ayers contends that the trial court abused its discretion in denying his motion to suppress because Summers lacked reasonable suspicion to detain him.

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Amador v. State*, 221 S.W.3d 666, 673 (Tex. Crim. App. 2007). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990). The trial judge is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Wiede v. State*, 214 S.W.3d 17, 24–25 (Tex. Crim. App. 2007). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor; and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673; *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006). But we review *de novo* the trial court's

determination of the law and its application of law to facts that do not turn upon an evaluation of credibility and demeanor. *Amador*, 221 S.W.3d at 673.

When reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *Wiede*, 214 S.W.3d at 24; *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Kelly*, 204 S.W.3d at 818-19. We then review the trial court's legal ruling *de novo*, unless the trial court made explicit findings of fact, supported by the record, that are dispositive of the legal issue. *Id.* at 819.

Under *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), the police can stop and briefly detain a person for investigative purposes if they have a reasonable suspicion supported by articulable facts that criminal activity may be afoot. *United States v. Sokolow*, 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989) (citing *Terry*, 392 U.S. at 30, 88 S.Ct. at 1884–85). Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that, when combined with rational inferences from those facts, would lead him to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford v. State*, 158 S.W.3d 488, 492–93 (Tex. Crim. App. 2005).

The State does not have to establish with absolute certainty that a crime occurred but must elicit testimony of sufficient facts to show that the officer had reasonable suspicion that the defendant committed a traffic violation. *See Abney v. State,* 394 S.W.3d 542, 548 (Tex. Crim. App. 2013); *Garcia v. State*, 827 S.W.2d 937, 944 (Tex. Crim. App. 1992). In deciding whether reasonable suspicion existed, we look at the facts available to the officer at the time of the detention. *Crain v. State*, 315 S.W.3d 43, 52–53 (Tex. Crim. App. 2010). This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Ford*, 158 S.W.3d at 492. Whether the totality of the circumstances is sufficient to support an officer's reasonable suspicion is a legal question that we review *de novo*. *See Madden v. State*, 242 S.W.3d 504, 517 (Tex. Crim. App. 2007).

The Texas Transportation Code requires the operator of a motor vehicle to have a taillamp or separate lamp that illuminates the rear license plate. TEX. TRANSP. CODE ANN. § 547.322(f). Section 547.322(f) provides:

> A taillamp or a separate lamp shall be constructed and mounted to emit a white light that:
>
> (1) illuminates the rear license plate; and
>
> (2) makes the plate clearly legible at a distance of 50 feet from the rear.

*Id.*

Ayers argues that Summers was not shown to have had reasonable suspicion for the stop because the photos and video introduced during the suppression hearing show proper illumination of the license plate of Ayers's vehicle. Ayers contends that Summers's testimony that the illumination was from an extraneous light source is meaningless given the contradicting photographic and video evidence.

We generally "give almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's findings are based on an evaluation of credibility and demeanor." *Carmouche v. State*, 10 S.W.3d 323, 332 (Tex. Crim. App. 2000) (quoting *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)). In *Carmouche*, however, the Court of Criminal Appeals declined in the "unique circumstances of [that] case" to give "almost total deference" to the trial court's findings. *Id.* The *Carmouche* court explained that the nature of the evidence presented in the videotape from the patrol car's camera did not pivot "on an evaluation of credibility and demeanor"; rather, the videotape presented "indisputable visual evidence" contradicting essential portions of the officer's testimony. *Id.* The *Carmouche* court thus held: "In these narrow circumstances, we cannot blind ourselves to the videotape evidence simply because [the officer's] testimony may, by itself, be read to support the Court of Appeals' holding." *Id*.

*Carmouche*, however, is distinguishable from this case. The photo and video evidence admitted at the suppression hearing here is not "indisputable visual evidence"

contradicting essential portions of Summers's testimony. Most of the relevant portion of Summers's in-car camera video was taken from behind Ayers's vehicle such that Summers's patrol car lights could have illuminated the license plate, just as Summers testified. Summers also identified two still photographs from the video, in which the license plate did not seem to be illuminated. Taking into account the distance, darkness, and the quality of video, we therefore cannot conclude from the video alone whether Ayers's license plate was lit.

Because the video and photographic evidence is not indisputable here, Summers's testimony cannot be disregarded as meaningless. Instead, we must give almost total deference to the trial court's rulings on questions that turn on the trial court's evaluation of credibility and demeanor. *See Wiede,* 214 S.W.3d at 24. As the finder of fact, the trial court was free to believe Summers's testimony that he observed that there were no lights illuminating Ayers's rear license plate when Summers's conducted the traffic stop.

Ayers also argues that Summers could not have had reasonable suspicion for the stop because Summers admitted that he was never within fifty feet of Ayers's vehicle before stopping him. Ayers contends that without Summers positioning himself fifty feet from the vehicle's rear, Summers could not have established a reasonable suspicion that Ayers's vehicle violated section 547.322(f)(2). However, section 547.322 uses the term "and" to require compliance with both (f)(1) and (f)(2). *See* TEX. TRANSP. CODE ANN. § 547.322. Therefore, a violation of *either* (f)(1) *or* (f)(2) is a violation of section 547.322. *See*

*id.; Gelinas v. State*, 398 S.W.3d 703, 709 (Tex. Crim. App. 2013) (plurality op.). Accordingly, Summers could have had reasonable suspicion that Ayers violated section 547.322 even if Ayers's license plate was clearly legible fifty feet from the rear of Ayers's vehicle. *See* TEX. TRANSP. CODE ANN. § 547.322; *Gelinas*, 398 S.W.3d at 709.

Considering the totality of the circumstances, we therefore conclude that Summers had specific, articulable facts that, when combined with rational inferences from those facts, would have led him to reasonably conclude that Ayers had violated section 547.322(f) of the Transportation Code at the time of the stop. We thus hold that the trial court did not err in concluding that Summers had reasonable suspicion to stop and detain Ayers. *See Ford*, 158 S.W.3d at 492–93. Accordingly, the trial court did not err in denying Ayers's motion to suppress. We overrule his first issue.

**Pretrial Jail Time Credit**

In his second issue, Ayers argues that the trial court's judgment should be reformed to properly reflect the pretrial jail time credit to which he is entitled. The State concedes error, and we agree.

Texas Code of Criminal Procedure article 42.03 provides that the trial court "shall give the defendant credit on the defendant's sentence for the time that the defendant has spent . . . in jail for the case." TEX. CODE CRIM. PROC. ANN. art. 42.03, § 2(a). The judgment in this case reflects a total jail time credit of 269 days, which Ayers suggests should instead be 369 days. The 369-day credit is based on documents in the record from the Brazos

County Sheriff's Office reflecting pretrial incarceration of January 15, 2018, January 16, 2018, and January 22, 2018, to the time of sentencing on January 23, 2019.

Because an appellate court has the authority to modify an incorrect judgment to make the record speak the truth when it has the necessary information to do so, we modify the trial court's judgment to reflect a total jail time credit of 369 days. *See* TEX. R. APP. P. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). We sustain Ayers's second issue.

## Conclusion

We modify the trial court's judgment to reflect a total jail time credit of 369 days. We otherwise affirm the trial court's judgment as modified.


MATT JOHNSON
Justice


Before Chief Justice Gray,
     Justice Johnson, and
     Justice Davis[2]
Affirmed as modified
Opinion delivered and filed August 25, 2021
Do not publish
[CR25]



---

[2] The Honorable Rex Davis, Senior Justice (Retired) of the Tenth Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE ANN. §§ 74.003, 75.002, 75.003.