

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

## NO. PD-1522-11

**JAMES HENRY GELINAS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON STATE'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE EIGHTH COURT OF APPEALS
### EL PASO COUNTY

KEASLER, J., announced the judgment of the Court and delivered an opinion, in which KELLER, P.J., HERVEY, and ALCALA, JJ., joined. KELLER, P.J., filed a concurring opinion. COCHRAN, J., filed a concurring opinion. MEYERS, J., filed a dissenting opinion. PRICE, J., filed a dissenting opinion. JOHNSON, J., filed a dissenting opinion. WOMACK, J., concurred.

## O P I N I O N

The State asks us to overrule *Hutch v. State*[1] upon which the lower court relied in

finding that Gelinas suffered egregious harm from an erroneous jury instruction. Upon

review, we believe *Hutch* was flawed and produces unjust results, and we hereby disavow

---

[1] *Hutch v. State*, 922 S.W.2d 166 (Tex. Crim. App. 1996) (plurality opinion).

it. We find the contested jury instruction in the instant case was erroneous, but egregious harm did not result. Accordingly, we reverse the court of appeals' judgment.

## I. Background

### A. Trial

Gelinas was charged with the offense of driving while intoxicated following a roadside stop conducted by Department of Public Safety Trooper Diego Marquez. At trial, Trooper Marquez testified that he stopped Gelinas because he believed Gelinas failed to signal out of a private parking lot and that the light illuminating Gelinas's license plate was not white, as required by law. Marquez conceded, however, that the former ground for the stop proved insupportable because the Transportation Code does not require drivers to signal when turning out of private lots. As a result, the sole ground for the stop became Gelinas's alleged non-compliance with Transportation Code section 547.322(f), mandating that lights illuminating license plates be white.[2] Trooper Marquez testified that the light illuminating the license plate was not white, though he had difficulty recalling the actual color of the light. The State also offered video from Trooper Marquez's in-car police camera, though the testimony at trial suggests that the video fails to conclusively establish the color of the license plate light. According to Marquez, Gelinas exhibited a number of signs of intoxication after being pulled over and performed poorly on the standardized field sobriety tests. Based on

---

[2] TEX. TRANSP. CODE § 547.322(f) ("A taillamp or a separate lamp shall be constructed and mounted to emit a white light that: (1) illuminates the rear license plate; and (2) makes the plate clearly legible at a distance of 50 feet from the rear.")

his observations, Trooper Marquez concluded that Gelinas was intoxicated.

In addition to arguing that he was not intoxicated, Gelinas argued at trial that the light illuminating his license plate was, in fact, white. In support of his position, Gelinas referred to Trooper Marquez's in-car camera video as proof that the light was white. Additionally, Gelinas offered the testimony of his wife, who stated that the light was white and that the car had passed numerous state inspections. A photograph of the license plate taken by Gelinas's wife sometime after the incident was also offered at trial, though, like as with the video, it appears from the testimony at trial that the photograph was somewhat inconclusive as to the color of the license plate light.

Because the issue regarding the color of the light was contested, the trial judge included an instruction pursuant to Texas Code of Criminal Procedure article 38.23(a)[3] in the jury charge, which stated:

> You are instructed that under our law no evidence obtained or derived by an officer or other person as a result of an unlawful stop and detention shall be admissible in evidence against such accused. An officer is permitted to make a temporary investigative detention of a motorist if the officer has specific articulable facts which, taken together with rational inferences from those facts, lead him to conclude that a person detained actually is, has been, or soon will be engaged in criminal activity. Now, bearing in mind this instruction, if

---

[3] TEX. CODE CRIM. PROC. art. 38.23(a) ("No evidence obtained by an officer or other person in violation of any provisions of the Constitution or laws of the state of Texas, or of the Constitution or law of the United States of America, shall be admitted in evidence against the accused on the trial of any criminal case. In any case where the legal evidence raises an issue hereunder, the jury shall be instructed that if it believes, or has reasonable doubt, that the evidence was obtained in violation of the provisions of this Article, then and in such event, the jury shall disregard any such evidence so obtained.")

you find from the evidence that on the occasion in question the Defendant, James Henry Gelinas, was driving his vehicle on a public road immediately preceding his stop and detention by the officer and you find from the evidence that his vehicle failed to comply with the Texas Transportation Code Provision, which requires a white light to illuminate the vehicle's license plate or you have a reasonable doubt thereof, then such stopping of the accused would be illegal and, if you find the facts so to be, or if you have a reasonable doubt thereof, you will disregard this testimony of Trooper Marquez relative to his stopping the defendant and his conclusions drawn as a result thereof, and you will not consider such evidence for any purpose whatsoever.

The instruction was clearly erroneous in that it stated the exact opposite of what the law provides. In truth, if the jury found that Gelinas was driving on a public road and failed to comply with the law requiring a white light, the stop would have been legal, not illegal, and thus the jury could have properly considered the testimony and conclusions of Trooper Marquez.

Gelinas was found guilty of driving while intoxicated and was sentenced to 180 days confinement probated for fifteen months and fined $1000.

## B. Appeal

On appeal, Gelinas asserted, among other things, that he suffered egregious harm as a result of the charge error.[4] Because Gelinas did not object to the erroneous jury instructions at trial, the court of appeals conducted an *Almanza*[5] harm analysis to determine whether the

---

[4] *Gelinas v. State*, 2011 Tex. App. LEXIS 4524, *7 (Tex. App.—El Paso June 15, 2011).

[5] *Almanza v. State*, 686 S.W.2d 157 (Tex. Crim. App. 1985) (op. on reh'g)

error resulted in egregious harm.[6]  Under *Almanza*, courts evaluate harm by taking into account (1) the entire jury charge; (2) the state of the evidence, including contested issues; (3) arguments of counsel; and (4) any other relevant information contained in the record as a whole.[7]  In its analysis, the court of appeals noted the similarities between the facts of the instant case and those in our *Hutch v. State* plurality opinion, which essentially stands for the proposition that when a defendant fails to object to a misstatement of the law relevant to a contested issue in a jury charge's application paragraph, the fact that jury arguments properly explained the law cannot render the resulting error harmless.  The court of appeals opted to follow our reasoning in *Hutch*, offering little more than an account of our analysis in *Hutch* and a blanket conclusion of egregious harm.[8]  That court reversed and remanded the case accordingly.[9]  Upon review, we conclude that *Hutch* lacks the persuasive value to which the court of appeals attributed it.

## II.  Analysis

### A.  *Hutch*

In *Hutch*, there was a similarly erroneous article 38.23(a) jury instruction containing

---

[6]  *Gelinas*, 2011 Tex. App. LEXIS 4524 at *9–10.

[7]  *Almanza*, 686 S.W.2d at 171.

[8]  *Gelinas*, 2011 Tex. App. LEXIS 4524 at *10 (citing *Hutch*, 922 S.W.2d at 170).

[9]  *Id*. at *13–14.

a misstatement of the law.[10] Hutch's arrest was based on the discovery of drugs in a car which was allegedly pulled over because the driver and the passenger, Hutch, were not wearing seatbelts.[11] Hutch claimed that he and the driver had been wearing their seatbelts and thus the stop was illegal and all subsequently obtained evidence inadmissible.[12] Because the issue was contested, the trial judge included an article 38.23 instruction.[13] The instruction, however, erroneously stated the exact opposite of what the law provided. It instructed the jury that if they found that the driver of the car and Hutch had not been wearing their seatbelts, the stop was illegal, and they should disregard the officer's testimony and conclusions.[14] In fact, in this scenario, the stop would have been legal and the jury could have considered the testimony and conclusions of the officer.[15]

In *Hutch*, we concluded that, with regard to the first *Almanza* factor addressing the entire charge, the error was "unquestionably wrong" and "was 180 degrees opposite of what it should have been."[16] We held this factor weighed in favor of finding egregious harm

---

[10] *Hutch*, 922 S.W.2d at 169–70.

[11] *Id*. at 169.

[12] *Id*.

[13] *Id*.

[14] *Id*.

[15] *Id*. at 170.

[16] *Id*. at 172 (citing *Hutch v. State*, 881 S.W.2d 92, 94 & 96 (Tex. App.—Houston [1st Dist.] 1994).

because the error occurred in the application paragraph of the jury charge—the portion which authorizes the jury to act—and also on the appellate presumption that the jury understood and followed the jury charge absent evidence to the contrary.[17]

*Hutch* continued its analysis by addressing the second *Almanza* factor, calling for consideration of the state of the evidence. We held that the issue was a contested one, and noted that no instruction would have been required otherwise.[18]

As for the third *Almanza* factor—arguments of counsel—we originally concluded that the arguments of counsel, though correct, were insufficient to cure the resulting error.[19] We based this conclusion, in part, on the fact that it has long been said that "jury arguments are not evidence and the jury may not consider them as such" and on the Supreme Court's holding that "arguments of counsel cannot substitute for instructions by the court" in addition to language from one of our own prior opinions stating that "jury argument is not a substitute for a proper jury charge."[20] In addition, we cited case law suggesting that a jury argument alone is never controlling in an analysis under *Almanza*.[21]

---

[17] *Hutch*, 922 S.W.2d at 172–73 (citing *Rose v. State*, 752 S.W.2d 529, 554 (Tex. Crim. App. 1987) (op. on reh'g); *Cobarrubio v. State*, 675 S.W.2d 749, 752 (Tex. Crim. App. 1983); *Gardner v. State*, 730 S.W.2d 675, 696 (Tex. Crim. App. 1987)).

[18] *Hutch*, 922 S.W.2d at 173.

[19] *Id*. at 174.

[20] *Id*. (citing *Taylor v. Kentucky*, 436 U.S. 478, 488–89 (1978); *Arline v. State*, 721 S.W.2d 348, 353 n.8 (Tex. Crim. App. 1986)).

[21] *Id*. (citing *Ruiz v. State*, 753 S.W.2d 681, 686 (Tex. Crim. App. 1988)).

Finally, our *Hutch* opinion made no mention of any other relevant considerations that might fit within the broad "catch-all" category that constitutes the fourth *Almanza* factor.

Because it is flawed and produces unjust results, we decline to apply *Hutch*'s reasoning to a jury charge error like that presented in this case. First, *Hutch*'s *Almanza* analysis did not attribute the appropriate weight to the various factors in light of the facts. As for its analysis of the first *Almanza* factor—the jury charge in general—we do not agree with the great weight the *Hutch* plurality placed on this factor, weighing in favor of finding egregious harm, simply because of the error's location in the application paragraph. Just as Presiding Judge Onion stated in his concurring and dissenting opinion in *Almanza*, we, too, question the wisdom of reversing upon "finding a single defect in the exalted 'application paragraph' . . . without consideration of the charge as a whole, or considering whether the jury was in any way misled."[22]

Further, the plurality overlooked the possibility that it is the very clarity of the error that may have mitigated any resulting harm. The erroneous instruction in the application paragraph in *Hutch* immediately followed a correct statement of the law in the abstract portion of the charge. The juxtaposition of the two almost certainly alerted the jury to the fact that the inconsistency was the result of a typographical error. Though we discuss this in greater detail in our analysis of *Hutch*'s conclusion regarding the third *Almanza* factor, it is relevant here that the jury arguments in *Hutch* involved correct recitations of the law,

---

[22] *Almanza*, 686 S.W.2d at 177 (Onion, J., concurring and dissenting).

which informed jurors of the correct law and thus likely indicated to the jury that the charge contained a simple mistake. Common sense would also indicate to most jurors that a police officer cannot legally stop and investigate a law-abiding citizen without cause.

Similarly, while we agree that the issue in question was a contested one, we believe our original conclusion that the second *Almanza* factor weighed in favor of egregious harm on this basis alone was overly simplistic. Resolving this factor in such a manner essentially means that if a trial judge grants a request for an article 38.23 instruction that happens to contain even the slightest error, an appellant is already one quarter of the way to establishing egregious harm. In erroneous article 38.23 instruction cases, this factor should be afforded less weight because it undermines the flexibility required of a factor test applied on a case-by-case basis and elevates an article 38.23 instruction to a special status subject to a modified factor test. Thus, we are inclined to limit the weight of this factor in the egregious-harm evaluation.

As for the third *Almanza* factor, the *Hutch* opinion's conclusion that the arguments of counsel, though correct, were insufficient to cure the resulting error relied upon factually distinguishable case law, *Taylor v. Kentucky* and *Arline v. State*, in support of its conclusion.[23] In both *Taylor* and *Arline*, the facts were significantly different than those in *Hutch*. There, the trial courts refused to give any version of the requested instructions.[24] As

---

[23] *Hutch*, 922 S.W.2d at 174 (citing *Taylor v. Kentucky*, 436 U.S. 478, 488–89 (1978); *Arline v. State*, 721 S.W.2d 348, 353 n.8 (Tex. Crim. App. 1986)).

[24] *Taylor*, 436 U.S. at 480–81; *Arline*, 721 S.W.2d at 353 n.8.

a result, the relevant law was entirely absent from the jury charges. For this reason, we do not believe that the holdings in *Taylor* and *Arline* deeming jury arguments insufficient substitutes for jury instructions apply in cases like *Hutch* or the present case, where arguments are not acting as substitutes for the instructions, but merely constitute a correct version of the law incorrectly reflected in the jury charge. In such cases, the jury is not deprived of all relevant law, but is simply faced with an obviously erroneous recitation of that law, and correct arguments may well serve to alert jurors to the presence and correctness of such errors. Our belief that the arguments of counsel can be relevant to harm is supported by the fact that the entirety of the third factor of *Almanza* focuses on arguments of counsel. If such arguments were not relevant to harm, why would this be the case?

Second, and perhaps more importantly, the *Hutch* opinion resulted in a windfall for Hutch and creates similar potential windfalls for other defendants in factually similar circumstances. A defendant may now remain silent where a jury charge is incorrect, hoping for an acquittal, and then, if a jury finds him guilty, raise the issue on appeal with the hope of obtaining a new trial. The State, however, has no such opportunity given its limited right of appeal.[25] Not only is the result unfair, but it also encourages defendants to remain silent with regard to errors in jury instructions and rewards the failure to correct charge errors. Both fairness and judicial economy favor doing away with such a holding.

Choosing to decline to apply *Hutch* does not mean that egregious harm did not occur

---

[25] *See* TEX. CODE CRIM. PROC. art. 44.01.

in Gelinas's case, however. The appropriate inquiry is a fact specific one which must be performed on a case-by-case basis.

**B. Gelinas's Case**

With regard to *Almanza*'s first factor, addressing the charge in its entirety, clear error exists in the application paragraph of the charge to the jury because the instruction misstated the law. The location of the error in the application paragraph is not as significant as we once believed. The proper recitations of the law in the abstract paragraph and the arguments of counsel, discussed in greater detail below, along with the common sense of the jurors, likely minimized the impact of this error. In fact, the language preceding the incorrectly worded portion of the jury charge clearly states that it should be read "bearing in mind [the foregoing] instruction," referring to the abstract portion. This informed the jury that they were to apply the law given in the abstract, which constituted a correct statement of the law. Ultimately, although this factor weighs in favor of a finding of egregious harm, we do not place such great weight on it as the court of appeals was inclined to do.

With regard to the second factor, it is obvious that the issue here was a contested one. The State does not contest this. As a result, this, too, weighs in favor of a finding of egregious harm. However, as discussed above, in the context of an article 38.23 instruction, this factor should be assigned less weight given that the presence of an instruction in the first instance means that the issue was a contested one.

Regarding the arguments of counsel—*Almanza*'s third factor—both parties mentioned

the law regarding the legality of the stop in their arguments to the jury. In the first portion of the State's closing argument, the prosecutor referred the jury to the incorrect portion of the jury charge and went so far as to read part of it, though not enough of it to constitute an incorrect statement of the law as he did not reach the portion regarding whether the stop was legal or illegal. Nevertheless, the State went on to correctly address the issue, explaining that the stop was legal so long as the light on Gelinas's license plate was not white. In the final portion of the State's closing argument, the prosecutor again correctly stated the law with regard to the stop's legality, explaining that if the light was red, that would constitute a violation of the Transportation Code, and Trooper Marquez could have validly stopped Gelinas.

Defense counsel also addressed the issue of the legality of the stop. In his closing argument, counsel referred to the incorrect jury charge and read the incorrect portion in its entirety. Like the State, however, he proceeded to correctly set out the law regarding the legality of the stop and even went so far as to tell the jury that if they found that the light was white, they could not consider anything else that occurred after the stop.

Thus, though there were some misstatements of the law during jury arguments, both parties also argued the correct law very clearly to the jury. Given that we have determined that jury arguments bear significantly on an *Almanza* analysis, we believe the third factor weighs significantly in favor of a finding of no egregious harm.

As for the fourth *Almanza* factor, which accounts for any other relevant information

contained in the record, we note the absence in the record of a note from the jury during deliberations expressing confusion as to the contradictory language regarding the 38.23 instruction. This suggests that the jury was not confused by the typographical error in the jury charge or the misstatements during the arguments of counsel. In light of the obviousness of those errors, the common sense of the jurors, the correct portion of the jury charge, and the correct statements of law in both parties' closing arguments, we believe it probable that the jury resolved the issue in accordance with the law. This factor, too, weighs in favor of finding no egregious harm.

Ultimately, we believe that the third and fourth factors weighing in favor of finding no egregious harm outweigh the first and second factors weighing in favor of finding egregious harm. Our conclusion is supported by the fact that the Gelinas jury was unlikely to have been misled given the fact that common sense, the correct abstract paragraph, and correct jury arguments most likely alerted the jury to the error and allowed them to recognize the mistake and properly apply the law as correctly stated in the preceding sentence. We conclude that no egregious harm resulted from the erroneous instruction in the jury charge. We limit our holding today to the facts of this case and reiterate our assertion that the *Almanza* analysis is a fact specific one which should be done on a case-by-case basis.

### III. CONCLUSION

We find our opinion in *Hutch* was flawed and produces unjust results, and we hereby disavow it. After conducting an *Almanza* analysis in the instant case, we find the erroneous

article 38.23 instruction did not egregiously harm Gelinas. Accordingly, we reverse the court of appeals' judgment and remand the case to the court of appeals to address Gelinas's remaining points of error.

DATE DELIVERED: May 15, 2013

PUBLISH