

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

No. 07-14-00040-CR

LANEY PAUL BREWER AKA LANEY
PAUL CHAMBERS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

On Appeal from the 108th District Court
Potter County, Texas
Trial Court No. 65081-E, Honorable Douglas Woodburn, Presiding

December 4, 2014

## MEMORANDUM OPINION

Before QUINN, C.J., and CAMPBELL and PIRTLE, JJ.

Appellant Laney Paul Brewer, aka Laney Paul Chambers, was indicted for capital murder and convicted of the lesser included offense of aggravated robbery. He was assessed a fifty-one year prison sentence. On appeal, he contends that 1) the jury charge at the guilt/innocence phase violated due process and 2) the trial court erred in admitting statements made by Leslee Wiseman in violation of the hearsay rule and Confrontation Clause of the United States Constitution. We affirm the judgment.

*Background*

Ricky Provence was found dead in his apartment with a rope around his neck. Appellant and Leslee Wiseman earlier encountered Provence in a bar. The encounter led to Provence inviting Wiseman to his apartment. Subsequently, Wiseman phoned appellant asking for help; allegedly, Provence would not let her leave. Other evidence indicated that appellant and Wiseman planned to rob Provence. Eventually, appellant arrived at the apartment and engaged in a struggle with Provence. Wiseman apparently joined in and either struck Provence with something or choked him to unconsciousness. According to appellant, Wiseman then removed Provence's truck keys from his pocket and the two drove away in it. Other evidence revealed that she also took other property from Provence's abode, some of which was placed in a Crown Royal bag. Wiseman left the bag with a third party named Warrick, and appellant later retrieved it from him.

*Jury Charge*

Appellant initially contends that a portion of the trial court's jury charge denied him due process. The portion in question involved the following instruction:

> Now, if you find from the evidence that Dewanna Adams was a person to whom the defendant made a statement, if any, against the defendant's interest during a time when Dewanna Adams was imprisoned or confined in the same correctional facility as the defendant, if he was so imprisoned or confined, then you are further instructed that you cannot convict the Defendant upon Dewanna Adam's testimony, unless you first believe that her testimony is true and shows the guilt of the Defendant as charged in the indictment, and then you cannot convict the Defendant unless Dewanna Adams's testimony is corroborated by other evidence tending to connect the Defendant with the offense charged . . . .

According to appellant, he was never incarcerated with Dewanna Adams and could never have uttered a statement against his interests to her while so incarcerated. Thus,

he continued, the instruction "was legally erroneous, a mischaracterization of the facts at trial and misleading to the jury in that the language of the jury charge implied that Appellant had a conversation with Dewana Adams . . . in which he made statements against his interests as to his guilt." This argument was not proffered below; indeed, the record illustrates that appellant did not object to the instruction.

We overrule the issue for the following reasons. First, because appellant did not object to the instruction, he did not inform the trial court that it denied him due process. Having failed to raise that complaint below, it was not preserved for appeal. *See Yazdchi v. State*, 428 S.W.3d 831, 844 (Tex. Crim. App. 2014) (stating that complaints concerning the denial of due process may also be waived if not preserved via objection at trial).

Second, and assuming *arguendo* that appellant simply complains about error in the jury charge (as opposed to a deprivation of due process), reversal would be unwarranted unless the mistake caused him to suffer egregious harm. *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1984). This is so because he failed to object to it below. *Id.* And, such harm arises if the error denied him a fair and impartial trial. *Id.* We make that assessment by considering the entire jury charge, the state of evidence including contested issues, arguments of counsel, and any other relevant information in the record. *Gelinas v. State*, 398 S.W.3d 703, 705-06 (Tex. Crim. App. 2013). With this in mind, we first note that the instruction was based on article 38.075 of the Code of Criminal Procedure. The latter provides that a defendant may not be convicted of an offense on the testimony of a person to whom he made a statement against his interest during his imprisonment in the same correctional facility without

3

corroborating evidence. TEX. CODE CRIM. PROC. ANN. art. 38.075(a) (West Supp. 2014). While it appears that appellant was not incarcerated with Adams and could not have made such a statement to her, the instruction does not indicate that such a statement was so made. Instead, it simply informed the jury that if the jury was to find that a statement was made, it could not use it as a basis to convict unless the statement was corroborated by other evidence. Contrary to appellant's contention, it does not interject into the debate non-existent evidence of such a statement being made. Indeed, one can reasonably view it as irrelevant surplusage.

We further note that no one argued that appellant uttered an incriminatory statement to Adams. Thus, closing arguments did not enhance any purportedly harmful effect of the instruction.

And, to the extent that the trial court admitted testimony from Adams that inculpated appellant, it consisted of statements purportedly uttered by Wiseman while confined in a jail cell with Adams.[1] It would appear that article 38.075(a) would not apply to such testimony because the utterances were not made by the accused.

To that, we add the evidence of appellant informing Warrick about the assault upon Provence, how he struck the victim too many times, how he "screwed up," and how he and Wiseman intended to rob Provence. Those admissions alone constituted ample evidence supporting appellant's conviction even if one was to ignore the evidence of appellant obtaining from Warrick the Crown Royal bag and its contents taken by Wiseman from Provence and Adams' testimony of Wiseman's admissions.

---

[1] The statements made by Wiseman in the presence of Adams implicated both she and appellant. That is, Wiseman discussed how 1) she met Provence in a bar and enticed him to take her home so they could "hit a lick," 2) they beat Provence, 3) they searched his apartment for money and left, and 4) they returned the next day and strangled Provence when they found him still alive. Wiseman made the disclosures while in a jail cell with a number of other detainees, including Adams.

4

Under these circumstances, the trial court informing the jury that it must first find corroborating evidence before any comment made by appellant to Adams could be used to convict did not mislead the jury or cause appellant to suffer egregious harm. *See Gelinas v. State*, 398 S.W.3d at 709-10 (stating that the jury was not likely to be misled by error in the jury charge due to the obviousness of the error, the common sense of the jurors, the correct portion of the jury charge, and the correct statements of law in both parties' closing arguments.).

*Confrontation Clause*

Next, appellant complains of a purported deprivation of his right to confront witnesses. The evidence consisted of the foregoing utterances made by Wiseman in the presence of and overheard by Adams and Wiseman's comments to Warrick. He also suggests that the same evidence was inadmissible hearsay. We overrule the issue.

The testimony overheard by Adams was previously described. The utterances from Wiseman to Warrick occurred after the former had awakened the latter while crawling through a window of a room in which Warrick slept. They consisted of 1) Wiseman and appellant robbing a man and leaving him hurt, 2) the man putting his hands on her and her calling appellant to rescue her, 3) appellant assaulting the man, 4) Wiseman placing her hands around the man's throat and choking him, and 5) the man being alive when they left. Warrick also testified that Wiseman left a purple Crown Royal bag with him and that appellant called Warrick later and asked for whatever Wiseman had left. As previously mentioned, Warrick and appellant also conversed, and during the conversation, appellant said 1) he had "screwed up," and 2) he "hit the guy

too many times but then Leslee got on top of him and choked him out." Appellant also said that they intended to rob the man.

Admissions against one's penal interests are admissible despite the hearsay rule. TEX. R. EVID. 803(24) (a statement which was at the time of its making so far contrary to the declarant's interest or so far intended to subject the declarant to civil or criminal liability that a reasonable person would not have made the statement unless the declarant believed it to be true is not excluded by the hearsay rule). This is of import because Warrick's reiteration of what appellant told him about "screw[ing] up," "hit[ting] the guy too many times," and intending to rob the man constitute such admissions. More importantly, Wiseman's own statements inculpating both her and appellant also fall within the scope of Rule 803(24) because they did not tend to transfer responsibility from her to appellant and were corroborated by both appellant's admissions and his picking up the Crown Royal bag left by Wiseman. Thus, allowing Adams and Warrick to reiterate the inculpatory admissions at issue did not violate the hearsay rule. *See Coleman v. State,* 428 S.W.3d 151, 158 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (stating that to qualify the statements must subject the declarant to criminal liability and there must be sufficient corroborating circumstances to indicate their trustworthiness); *see also Orona v. State,* 341 S.W.3d 463, 465 (Tex. App.—Fort Worth 2011, pet. ref'd) (holding that testimony from a witness that an accomplice stated that he and the defendant beat on the victim and "whooped his ass" exposed the declarant to criminal responsibility).

As for the argument encompassing the right to confront witnesses under the United States Constitution, such statements must be testimonial in nature. *Langham v.*

6

*State*, 305 S.W.3d 568, 575-76 (Tex. Crim. App. 2010). Spontaneous, volunteered statements made in front of acquaintances are not of that ilk. *Paul v. State*, 419 S.W.3d 446, 455 (Tex. App.—Tyler 2012, pet. ref'd); *Orona v. State*, 341 S.W.3d at 463; *Davis v. State*, 169 S.W.3d 660, 667 (Tex. App.—Austin 2005), *aff'd*, 203 S.W.3d 845 (Tex. Crim. App. 2006). That describes the nature of and settings in which the statements in question were made. They were volunteered by the declarants to the witness or overheard by the witness when made by the declarant to others. They were not sought by government officials for purposes of a criminal prosecution. Accordingly, none of them were testimonial; so, their admission did not deny appellant his right to confront witnesses.

Appellant's issues are overruled, and the judgment is affirmed.


Brian Quinn
Chief Justice


Do not publish.