

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-22-00099-CR

_____

MICHAEL RAY CARTMILL, Appellant

V.

THE STATE OF TEXAS

On Appeal from the 415th District Court
Parker County, Texas
Trial Court No. CR21-0434

Before Womack and Wallach, JJ.; and Lee Gabriel (Senior Justice, Retired,
Sitting by Assignment)
Memorandum Opinion by Justice Gabriel

## MEMORANDUM OPINION

A jury convicted Michael Ray Cartmill of aggravated assault with a deadly weapon. *See* Tex. Penal Code Ann. § 22.02(a)(2). Cartmill pled true to two punishment enhancement paragraphs contained in the indictment. The jury found the enhancements to be true and assessed his punishment at 55 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. *See id.* § 12.42(d). In his sole issue, Cartmill contends that the trial court erred in overruling his objection to the inclusion of the definition of reckless and the reckless mens rea in the definition of assault when the indictment alleged only a knowing or intentional act. He argues that he was harmed by the ruling because this error allowed the jury to convict on a state of mind not alleged in the indictment. We affirm.

## I. BACKGROUND[1]

On April 25, 2021, David Martinez Galindo was traveling with his family in his Dodge truck from his home in Weatherford to Fort Worth. Galindo was driving with his wife, Elsie, in the front seat and his daughters and brother in the back seat. Before entering onto the service road to Interstate 20, Galindo was driving near a Chick-Fil-A, when a Jaguar automobile ran a stop sign and almost crashed into Galindo's truck. After Galindo escaped the first potential collision, the Jaguar continued to move in

---

[1]Cartmill does not challenge the sufficiency of the State's evidence against him; therefore, we will dispense with a lengthy recitation of the factual background and confine our discussion of the facts only as needed for context and to resolve the issue raised.

front of Galindo's truck multiple times to cut him off as the two vehicles proceeded on the service road. Galindo repeatedly took evasive action to avoid hitting the Jaguar.

Once the two vehicles were traveling on Interstate 20, the Jaguar pulled into the left lane directly beside Galindo's truck. While traveling in that manner, Galindo's six-year-old daughter told him that "someone was pointing at [them]." At that point, Galindo was able to see that there were two people in the front seat of the Jaguar. Galindo described the driver as a man with black hair, a beard, and wearing a COVID-type face mask. Galindo described the passenger as bald with tattoos on his face. Galindo identified Cartmill as the passenger of the Jaguar. Galindo explained that as the two cars were traveling side-by-side, Cartmill pointed a gun out his open window at Galindo and then Cartmill put the gun to his lips "like for me was, like, to be quiet, like shut up and leave." After Cartmill pointed the gun and put it to his lips, Galindo told his wife to call 911 and take a picture of the license plate. She did so while Galindo continued to follow the car until the Jaguar took an exit towards a Valero gas station. Galindo continued on to his destination. After receiving a phone call from the police, Galindo and his family returned to the gas station to talk to the police.

Galindo's brother, Uriel Martinez Galindo (Uriel), was in the back seat by the driver's side window when these events occurred. At trial, Uriel described the events as he recalled them, saying that the two people in the Jaguar were both in the front

3

seats of the vehicle. Uriel's only recollection of the driver was that he wore a COVID-type mask. He described the passenger as bald with tattoos on his face and was able to make a courtroom identification of Cartmill as the passenger in the Jaguar. Uriel testified that Cartmill had the gun and, while he did not see the gun pointed at the truck and its occupants, he did see and demonstrate how Cartmill put the gun to his lips. Uriel considered this act to be a threat.

Elsie also testified about the events on Interstate 20. Elise stated, "He drew the gun out at my husband, [Galindo]." When asked, "Who is 'he?'" Elsie identified Cartmill. Elsie related that the person with the gun was the passenger, and she stated that she remembered the tattoos on his face. She further related how Cartmill pointed the gun at her husband and then put it to his lips as if "he was trying to shut [Galindo] up." Elsie described how scared she was and how she was shaking while taking the photo of the license plate and calling 911.

Sergeant Rick Reese of the Hudson Oaks Police Department responded to the dispatch that resulted from Elsie's 911 call. He went to the Valero gas station to investigate a reported road-rage incident involving a gun. When he arrived at the station, Reese found the car that he was looking for at the gas pumps and saw Cartmill pumping gas into it. When initially questioned, Cartmill acknowledged that there was an incident on Interstate 20 but denied that a gun was involved. Reese testified that he patted down Cartmill for officer safety and did not find a gun on him. Reese asked Cartmill if there were any guns in the car, and Cartmill responded that

4

there was not a gun in the car. Reese requested backup and Officer Roden arrived to assist. When asked by Reese if he could search the car, Cartmill said the car was not his but belonged to a person who was in the Valero store.[2] At this point, Reese asked Roden to "do a Terry frisk of the vehicle." Reese stated that Roden found a gun in the center console of the car.

After the gun was found, Cartmill reversed course in his conversation with Reese and stated that the driver had shown the gun to the Hispanic man in the other vehicle and that he had leaned back in the passenger seat to allow that to happen. Cartmill described how the driver put the gun to his own lips as if to say "shh" or "back up." Cartmill contended he never had the gun in his possession. He stated that the driver put the gun in the center console when the encounter ended. Based on Galindo's and Elsie's descriptions of the person holding and pointing the gun, Cartmill was arrested.

Cartmill was indicted for aggravated assault with a deadly weapon. The indictment alleged the offense as follows:

---

[2]The driver of the vehicle was Jason Eli Langley. According to Cartmill, Langley was in the gas station while Cartmill was pumping the gas. Reese and Roden described seeing a person matching the driver's description walk around the building of the station, and other officers were brought in to search for him. They did not find Langley.

hereinafter styled Defendant, on or about the 25th day of April, 2021, and before the presentment of this indictment, in the County and State aforesaid,

[did] then and there intentionally or knowingly threaten Elsie Munoz or David Martinez with imminent bodily injury by pointing a handgun at them and did then and there use or exhibit a deadly weapon, namely: a handgun, during the commission of the assault[.]

After both sides rested and closed in the guilt-or-innocence phase of the trial, the trial court held a charge conference. The second paragraph of the proposed charge of the court contained the following:

A person commits an assault if the person intentionally, knowingly, or *recklessly* causes bodily injury to another or threatens another with imminent bodily injury.

[Emphasis added.] The last paragraph on page one of the proposed charge read as follows:

A person acts recklessly, or is reckless, with respect to the result of his conduct when he is aware of but consciously disregards a substantial and unjustifiable risk that the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances, as viewed from the actor's standpoint.

The proposed charge also contained the following application paragraph:

Now, if you find from the evidence beyond a reasonable doubt that on or about the 25th day of April, 2021, in Parker County, Texas, the defendant, Michael Ray Cartmill, did then and there intentionally or knowingly threaten Elsie Munoz or David Martinez with imminent bodily injury by pointing a handgun at them and did then and there use or exhibit a deadly weapon, namely: a handgun, during the commission

6

of the assault, then you will find the defendant guilty as charged in the indictment.

At the charge conference, Cartmill objected to the definition of assault contained in the second paragraph on page one because it included the mental state of recklessness, which was not alleged in the indictment. Defense counsel also objected to the last paragraph on page one because it defined recklessly, and counsel argued the trial court should not "instruct the jury on a legal theory that they cannot convict on." The trial court overruled defense counsel's objections and submitted the jury charge with the recklessness language intact.

The jury found Cartmill guilty of aggravated assault with a deadly weapon. Cartmill pled true to the two punishment enhancement paragraphs contained in the indictment. The jury found the enhancement paragraphs to be true and assessed Cartmill's punishment at 55 years' confinement in the Institutional Division of the Texas Department of Criminal Justice. The trial judge sentenced Cartmill accordingly and he appealed.

## II. JURY CHARGE ERROR

In his sole issue, Cartmill contends, "The Trial Court Erred in Allowing the Jury to Convict [him] of Aggravated Assault under a Non-indicted Theory of Recklessness." Cartmill's counsel objected to the inclusion of the mens rea of recklessness in the definition of assault and the definition of reckless in the abstract language of the charge. The trial court overruled those objections. In reviewing a

7

jury-charge issue, an appellate court's first duty is to determine whether the charge contains error. *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996), *overruled in part on other grounds by Gelinas v. State*, 398 S.W.3d 703, 706–08 (Tex. Crim. App. 2013). "A jury charge may not authorize the conviction of the defendant on a theory permitted by the jury charge but not alleged in the indictment." *Gore v. State*, 332 S.W.3d 669, 673 (Tex. App.—Eastland 2010, no pet.). The State concedes that the trial court's rulings on the objections made by defense counsel to the charge were erroneous and, thus, that the inclusion of the culpable mental state of reckless in the definition of assault and the inclusion of the definition of reckless was in error. We hold that there was error in instructing the jury on the provisions concerning an uncharged mental state in the abstract portion of the charge. *See Hall v. State*, 145 S.W.3d 754, 759 (Tex. App.—Texarkana 2004, no pet.).

Having agreed with both Cartmill and the State that the trial court erred, we must now analyze that error for harm. Since Cartmill properly objected to the charge, an error causing some harm requires reversal. Tex. Code Crim. Proc. Ann. art. 36.19; *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see Abdnor v. State*, 871 S.W.2d 726, 732 (Tex. Crim. App. 1994); *Calvert v. State*, No. 02-18-00341-CR, 2020 WL 5241744, at *21 (Tex. App.—Fort Worth Sept. 3, 2020, pet. ref'd) (mem. op., not designated for publication). When assessing whether there is harm, we weigh four factors: (1) the entire jury charge; (2) the state of the evidence;

(3) the jury arguments; and (4) all other relevant information in the record. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022).

## A. Examination of Factors

### 1. The entire jury charge

The indictment alleged Cartmill committed aggravated assault with a deadly weapon intentionally or knowingly. The indictment did not allege a reckless mens rea. Neither the State nor Cartmill requested a lesser included offense that might require inclusion of a reckless mens rea.

The application paragraph contained in the court's charge read:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 25th day of April, 2021, in Parker County, Texas, the defendant, Michael Ray Cartmill, did then and there intentionally or knowingly threaten Elsie Munoz or David Martinez with imminent bodily injury by pointing a handgun at them and did then and there use or exhibit a deadly weapon, namely: a handgun, during the commission of the assault, then you will find the defendant guilty as charged in the indictment.

Cartmill did not object to the application paragraph.

The application paragraph here contains only the mental states alleged in the indictment—intentionally and knowingly. In the paragraph that applies the law to the facts, the jury members were instructed they could only convict if they found beyond a reasonable doubt that Cartmill intentionally or knowingly committed the offense of aggravated assault with a deadly weapon as alleged in the indictment. We find that there was no error in the application paragraph of the jury charge.

We presume the jury followed the trial court's charge. *See Thrift v. State*, 176 S.W.3d 221, 224 (Tex. Crim. App. 2005); *Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). Cartmill has not referred us to any evidence in the record to support an argument that the jury did not deliberate and did not decide his case based on the instructions contained in the charge as a whole.

In *Plata v. State*, the Court of Criminal Appeals discussed the difference between the abstract portions and the application paragraph of the court's charge and how the two are intended to relate. 926 S.W.2d 300, 302 (Tex. Crim. App. 1996), *overruled in part on other grounds by Malik v. State*, 953 S.W.2d 234, 239 (Tex. Crim. App. 1997). In *Plata*, the court explained that "abstract or definitional paragraphs serve as a kind of glossary to help the jury understand the meaning of concepts and terms used in the application paragraphs of the charge." *Id.* Jurors are authorized only to return a verdict under the conditions given by the application paragraph of the court's charge. *Id.* "The inclusion of a merely superfluous abstraction, therefore, never produces reversible error in the court's charge because it has no effect on the jury's ability fairly and accurately to implement the commands of the application paragraph or paragraphs." *Id.* at 302–03.

The term reckless was not incorporated into the application paragraph and is not an independent basis for convicting Cartmill. *See Williams v. State*, 226 S.W.3d 611, 618 (Tex. App.—Houston [1st Dist.] 2007, no pet.) (holding that when the application paragraph correctly instructs the jury, a superfluous abstract definition is

not error); *see also Livingston v. State*, No. 14-06-01031-CR, 2008 WL 2262033, at *5 (Tex. App.—Houston [14th Dist.] May 29, 2008, pet. ref'd) (mem. op., not designated for publication) (same); *Edwards v. State*, 228 S.W.3d 450, 453 (Tex. App.—Amarillo 2007, pet. ref'd) (same). Considering the jury charge as a whole, this factor weighs against a finding of harm.

## 2. State of the evidence and the jury arguments

We consider the state of the evidence to determine whether the evidence made it more or less likely that the jury charge caused Cartmill some harm. *See Campbell*, 664 S.W.3d at 245. Cartmill's counsel summed up during his opening statement what he believed would be the pivotal dispute that would be raised by the evidence: "This case may turn out to be rather simple for you. You're going to need to determine who displayed a firearm in the window." Cartmill, who began claiming that the driver was the one who displayed the weapon in his second story to the police at the Valero station, maintained that position at trial. The testimony in this trial as a whole revolved primarily around the identity of the person who displayed the weapon and not whether Cartmill acted intentionally, knowingly, or recklessly.

We can look at Cartmill's closing argument to assist in analyzing the relevant evidence. Cartmill argued that the evidence raised a variety of different theories the jury could rely upon to acquit him. First, it was argued that the evidence showed that the driver displayed the gun while Cartmill simply leaned back in his seat. The theory

11

was that Galindo and his wife misidentified Cartmill.[3]  Second, Cartmill's counsel argued that there was no evidence to support the allegation in the indictment that the gun was pointed at either Galindo or Elsie.  This argument centered on the description Galindo and Elsie gave on how the person in the Jaguar put the gun to his lips.[4]  Third, Cartmill's counsel argued that the evidence did not prove that Galindo felt threatened by the gun being pointed at him and his wife.[5]  Fourth, Cartmill's counsel asserted that although the indictment alleged Cartmill used a handgun, no one used the term handgun in describing the event.[6]  Finally, Cartmill's counsel told the jury members that the court's charge instructed them that they could "throw out evidence" if they believed it was illegally obtained.  His argument was based on the search of the vehicle that produced the gun used in the offense.

The evidence itself centered on whether Cartmill's story that the driver displayed the handgun was true or whether the testimony of Galindo, Elsie, and Uriel—that Cartmill pointed the handgun, thereby threatening Galindo and Elsie—

---

[3]Both Galindo and Elsie identified Cartmill as the person pointing the gun—to the police on the day of the offense and at trial.

[4]Elsie testified that "[Cartmill] got his – the gun out, pointed [it] at [Galindo], and he put it on his lip."  Galindo was asked, "So he pointed [the gun] towards you?"  Galindo answered, "Yes."

[5]Galindo testified that when this occurred, "I was thinking about my family, but I told my wife – and I told my wife to call the police."

[6]When Elsie was asked if she knew what a handgun is, she responded, "It was a small gun.  He had it in his hand."

was accurate. There was no direct or cross-examination testimony suggesting that the actions taken with the gun were committed recklessly instead of intentionally or knowingly.

In his summation of the evidence, Cartmill did not raise any issue concerning his mental state. Neither counsel used the word reckless or referred in any way to the objectionable portions of the court's charge in closing arguments. These factors weigh against a finding of harm.

### 3. All other relevant evidence

Cartmill did not refer to other relevant evidence in the record on this issue, nor have we found any. The State, however, has pointed to Cartmill's reference to the prosecutor's response to the objections in question as something this court should consider. When Cartmill objected to the inclusion of a reckless mens rea in the definition of assault and the definition of reckless in the abstract portions of the charge, the State made a faulty legal response. The prosecutor told the trial court that it was proper to put the objected-to instructions in the charge: "[T]hose would be the definitions within the Penal Code, which is why we include the definition as opposed to editing it as we see fit. . . . We have no intention whatsoever of harping on the word recklessly, referring to the word recklessly, or inferring in any way, shape, or form to the jury that they have an ability to convict [Cartmill] of anything other than intentionally or knowingly." Cartmill contends that the State's response "speaks to

the intent of the prosecutor to intentionally add a mental state not included in the indictment."

Cartmill's assertion is simply not supported by any relevant information revealed by the record of the trial as a whole. *See Almanza*, 686 S.W.2d at 171. The mental state of the person exhibiting the gun was not a dispute raised by the evidence or argument of counsel. This factor weighs against a finding of harm.

## B. Harm Analysis

Cartmill relies upon a single case to argue that the inclusion of a reference to the mens rea of reckless in the abstract portion of the court's charge deprived him of a fair trial. He argues that this case is analogous to *Reed v. State* because the jury instructions allowed him to be convicted for recklessly threatening Elsie or Galindo with imminent bodily injury by pointing a handgun at them. 117 S.W.3d 260, 265 (Tex. Crim. App. 2003). We disagree. *Reed* is distinguishable from the present case in the most significant manner. In *Reed*, the application paragraph included a mental state not alleged in the indictment. *Id.* The application paragraph of the court's charge instructed the jury that it could convict if it found that the defendant "intentionally or knowingly or recklessly caused bodily injury" when the indictment only alleged intentionally and knowingly. *Id.* at 261. As a result, the jury instructions expanded the indictment and allowed the jury to find the appellant guilty for conduct not alleged in the indictment. *Id.*

14

The application paragraph in the present case only included the mental states alleged in the indictment—intentionally and knowingly. The court's charge did not improperly broaden the indictment by including recklessly in the application paragraph but instead limited the jury to consider only the mental states alleged in the indictment. The extra mens rea language in the abstract definitions was merely superfluous as it had no effect on the jury's ability to implement the application paragraph. *See Campbell*, 664 S.W.3d at 254; *Plata*, 926 S.W.2d at 302–03; *Price v. State*, No. 10-22-00047-CR, 2023 WL 4363066, at *3 (Tex. App.—Waco July 5, 2023, no pet.) (mem. op., not designated for publication).

The record reveals that while the trial court erred in including superfluous instructions in the abstract portion of the charge, (1) the application paragraph of the charge limited the jury's consideration to the mental states alleged in the indictment; (2) the State presented compelling evidence that Cartmill exhibited the gun thereby threatening Galindo and Elsie; and (3) the parties focused their evidence and arguments on who actually displayed the gun, not the mental state of that person. Accordingly, in view of the totality of the record, we conclude Cartmill was not actually harmed by the charge error. We overrule Cartmill's sole issue.

## III. CONCLUSION

Having overruled Cartmill's sole issue, we affirm the trial court's judgment.

/s/ Lee Gabriel

Lee Gabriel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: August 10, 2023