

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-24-00149-CR

———————————————

LORENZO CHACON GARCIA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from Criminal District Court No. 2
Tarrant County, Texas
Trial Court No. 1663031

---

Before Birdwell, Bassel, and Womack, JJ.
Opinion by Justice Birdwell

# OPINION

## I. Introduction

A jury convicted Appellant Lorenzo Chacon Garcia of three counts of aggravated sexual assault of a child and one count of indecency with a child. *See* Tex. Penal Code Ann. §§ 21.11(a)(1), 22.021. His indictment's sex-offender notice alleged that he had a 2003 felony conviction for indecency with a child younger than 17 years, and when the jury found this allegation "true," Garcia's punishment for each count became automatic life confinement. *See id.* § 12.42(c)(2)(A)(i), (c)(2)(B)(ii).

In a single point on appeal, Garcia complains that his punishment charge improperly instructed the jury that he was eligible to receive good-conduct time credit while incarcerated. Because Garcia has failed to show that this unpreserved charge error caused him egregious harm, we overrule his single point and affirm the trial court's judgment.

## II. Punishment Charge Error

Because Garcia's charged offenses were listed in Code of Criminal Procedure Article 42A.054(a), the trial court was required to give a Section 4(a) instruction in the punishment charge. *See* Tex. Code Crim. Proc. Ann. arts. 37.07, § 4(a), 42A.054(a)(7), (9). However, the trial court gave the jury an outdated version of the instruction, which references good-conduct time. *See* Act of May 26, 2015, 84th Leg., R.S., ch. 770, §§ 2.08, 4.02, 2015 Tex. Gen. Laws 2321, 2367–68, 2395 (amended 2019) (current version at Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a)). The current

statutory instruction mentions only parole and not good-conduct time. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a).

Garcia's trial counsel did not object to the outdated instruction, but we must review "all alleged jury-charge error . . . regardless of preservation in the trial court." *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Unpreserved charge error warrants reversal only when the error resulted in egregious harm. *Nava v. State*, 415 S.W.3d 289, 298 (Tex. Crim. App. 2013); *Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g); *see* Tex. Code Crim. Proc. Ann. art. 36.19; *see also Igo v. State*, 210 S.W.3d 645, 646–47 (Tex. Crim. App. 2006) (stating that *Almanza* is the proper standard of review for unobjected-to charge error instructing jury about parole eligibility).

Garcia complains that the trial court erred by giving the outdated instruction instead of the current, statutorily required instruction. The State concedes that the trial court erred but asserts that Garcia was not egregiously harmed.[1]

**A. Outdated instruction**

The trial court gave the outdated version of the Section 4(a) instruction as follows and as highlighted by Garcia in his brief:

> Under the law applicable in this case, the Defendant, if sentenced to a term of imprisonment, may earn time off the period of incarceration imposed through the award of ***good conduct time***. Prison authorities

---

[1]We are not bound by the State's concession. *See Oliva v. State*, 548 S.W.3d 518, 520 (Tex. Crim. App. 2018). We nonetheless agree that under the circumstances presented here, the unobjected-to error did not cause Garcia egregious harm.

3

may award *good conduct time* to a prisoner who exhibits good behavior, diligence in carrying out prison work assignments, and attempts at rehabilitation. If a prisoner engages in misconduct, prison authorities may also take away all or part of any *good conduct time* earned by the prisoner.

The above paragraph was copied from a part of Article 37.07, Section 4(a) that was deleted from the statutory instruction in 2019, and the 2019 version applies to any defendant sentenced after September 1, 2019. *See* Act of May 15, 2019, 86th Leg., R.S., ch. 260, §§ 1–3, 2019 Tex. Gen. Laws 446, 446–48 (codified at Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a)). Garcia was sentenced on April 25, 2024.

Garcia does not set out in his brief the rest of the trial court's instruction. We have set it out below, marked by deletions and brackets to reflect the current statutory language:

It is also possible that [T]he length of time for which the [d]efendant will be [is] imprisoned might [may] be reduced by the award of parole.

Under the law applicable in this case, if the [d]efendant is sentenced to a term of imprisonment, he [the defendant] will not become eligible for parole until the actual time served equals one-half [of the sentence imposed] or 30 years, whichever is less, without consideration of any good conduct time he may earn. If the [d]efendant is sentenced to a term of less than four years, he [the defendant] must serve at least two years before he [the defendant] is eligible for parole. Eligibility for parole does not guarantee that parole will be granted. It cannot accurately be predicted how the parole law and good conduct time might be applied to this [d]efendant if he is sentenced to a term of imprisonment, because the application of these [that] law[] will depend on decisions made by prison and parole authorities.

You may consider the existence of [the] parole law[.] and good conduct time. However, you are not to consider the extent to which good conduct time may be awarded to or forfeited by this particular

4

~~Defendant.~~ You are not to consider the manner in which the parole law may be applied to this particular defendant.

As shown above, the instruction Garcia should have received does not mention good-conduct time but does state that although the jury could consider the existence of parole law, it could not consider the manner in which it might be applied to him. *See* Tex. Code Crim. Proc. Ann. art. 37.07, § 4(a).

We note ab initio that the inclusion of the outdated good-conduct instruction in this case is not an isolated incident in the trial courts of this judicial district. *See Robertson v. State*, No. 02-23-00202-CR, 2024 WL 3896426, at *5–6 (Tex. App.—Fort Worth Aug. 22, 2024, pet. ref'd) (mem. op., not designated for publication) (using outdated instruction in appeal arising out of the 297th District Court of Tarrant County); *Ramirez v. State*, No. 02-22-00194-CR, 2024 WL 190723, at *2–3 (Tex. App.—Fort Worth Jan. 18, 2024, pet. ref'd) (mem. op., not designated for publication) (using outdated instruction in appeal arising out of Criminal District Court No. 3 of Tarrant County); *Perez v. State*, No. 02-22-00245-CR, 2023 WL 8112900, at *3 (Tex. App.—Fort Worth Nov. 22, 2023, pet. ref'd) (mem. op., not designated for publication) (using outdated instruction in appeal arising out of the 485th District Court of Tarrant County); *Pedersen v. State*, Nos. 02-23-00024-CR, 02-23-00025-CR, 2023 WL 7852073, at *2 (Tex. App.—Fort Worth Nov. 16, 2023, pet. ref'd) (mem. op., not designated for publication) (using outdated instruction in appeal arising out of the 485th District Court of Tarrant County); *Bailey v. State*, No. 02-22-

5

00186-CR, 2023 WL 5766138, at \*5–6 (Tex. App.—Fort Worth Sept. 7, 2023, no pet.) (mem. op., not designated for publication) (using outdated instruction in appeal arising out of the 211th District Court of Denton County); *Weaver v. State*, No. 02-21-00081-CR, 2022 WL 2978730, at \*4 (Tex. App.—Fort Worth July 28, 2022, pet. ref'd) (mem. op., not designated for publication) (using outdated instruction in appeal arising out of the 462nd District Court of Denton County).

We have concluded that a defendant does not suffer egregious harm from the unpreserved erroneous inclusion of the good-conduct-time instruction when (1) the charge also contains the standard curative language stating that the jury could not consider the extent to which the good-conduct time could be awarded to or forfeited by the defendant, and the jury is presumed to have complied with that instruction; (2) the punishment-phase evidence makes it unlikely that the good-conduct-time reference caused any harm in light of the defendant's prior convictions or other bad acts; and (3) neither party mentions good-conduct time during closing arguments. *See Robertson*, 2024 WL 3896426, at \*1, \*6–7 (affirming defendant's sexual-assault and assault–family violence convictions based on the above in addition to his sentence's being "at the low end of the [punishment] range"); *Ramirez*, 2024 WL 190723, at \*1–3 (affirming defendant's convictions of six counts of aggravated assault on a public servant, one count of unlawful possession of a firearm, and one count of evading arrest based on the above in addition to the jury's not sending any notes regarding parole or good-conduct time credit or to ask how these would affect defendant's

6

punishment, and defendant's mere speculation that the jury would have assessed a shorter sentence without the instruction); *Perez*, 2023 WL 8112900, at *1, *3–5 (affirming defendant's aggravated-sexual-assault and assault–family violence convictions based on the above in addition to his receiving a minimum sentence for aggravated sexual assault and a mid-range sentence for assault–family violence); *Bailey*, 2023 WL 5766138, at *1, *5–7 (affirming murder conviction based on the above in addition to jury's not sending any notes inquiring about parole, about good-conduct time credit, or about their effects on the length of imprisonment; defendant's confession to the murder, which was recorded by home security cameras; and defendant's mid-range sentence); *Weaver*, 2022 WL 2978730, at *1, *4–7 (affirming indecency and sexual-assault-of-a-child convictions that resulted in a cumulative 40-year sentence based on the above in addition to the jury's not sending any notes inquiring about parole, good-conduct time credit, or their effects on the length of imprisonment); *see also Pedersen*, 2023 WL 7852073, at *1–4 (affirming murder and assault–deadly weapon convictions, for which defendant respectively received a life sentence and 90 years, when the jury was presumed to follow instruction not to consider the manner in which good-conduct time could be awarded or forfeited; the jury inquired about parole but not about good-conduct time or its effect on length of imprisonment; defendant stipulated in writing to the habitual-offender evidence; and despite defense counsel's mentioning good-conduct time during closing arguments regarding the impossibility of accurately predicting how parole or good-conduct time

might be applied to him, the State focused in its closing argument on considering the victims and did not mention good-conduct time or parole).

We hold that—as in the above cases—there was charge error here, and we encourage the trial courts within our jurisdiction to update their punishment charges to reflect the current statutory language. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (requiring trial court to deliver "a written charge distinctly setting forth the law applicable to the case").

## B. Standard of review

The appropriate inquiry for egregious harm is fact- and case-specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). In making an egregious-harm determination, we must consider "the actual degree of harm . . . in light of the entire jury charge, the state of the evidence, including the contested issues and weight of probative evidence, the argument of counsel[,] and any other relevant information revealed by the record of the trial as a whole." *Almanza*, 686 S.W.2d at 171. *See generally Gelinas*, 398 S.W.3d at 708–10 (applying *Almanza*). Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylor*, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). The purpose of this review is to illuminate the actual, not just theoretical, harm to the accused. *Almanza*, 686 S.W.2d at 174.

## C. Review

### 1. Voir dire and opening statements

During voir dire, the prosecutor told the potential jurors that the punishment range was "meant to cover a broad array of situations, not just the worst-case scenario" and then asked them if they would feel comfortable considering the full range of punishment until they knew the facts. The prosecutor also explained that the punishment range for first-degree felony aggravated assault of a child was 5 to 99 years' confinement or life, and that if the State proved that the accused had been to prison before, the range would increase to 15 years' to life. The prosecutor also explained that the punishment range for indecency was two to 20 years' confinement, but if the person "ha[d] been to prison for any reason whatsoever before, that bumps it up and the range then moves from five to life."

The prosecutor then stated, "And for both of those charges, if I prove that somebody has been convicted of sexual assault in the past, a felony sexual assault, that means there's only one possible punishment left, and that's life in prison . . . ." No one raised parole or good-conduct time during voir dire or during the guilt–innocence opening statements.

### 2. Guilt–innocence phase

During guilt–innocence, the State's first witness, a corporal with the Tarrant County Sheriff's Office, testified that he had confirmed Garcia's identity, fingerprinted him, compared Garcia's fingerprints to the fingerprints on the 2003

9

indecency-with-a-child judgment adjudicating guilt alleged in the sex-offender notice, and determined that the fingerprints on the 2003 judgment were Garcia's. He noted that other unique identifiers—the same full name and date of birth—also connected Garcia to the 2003 judgment. The trial court admitted into evidence Garcia's fingerprints and the 2003 judgment.

The complainant testified that when she was 16 years old, Garcia had plied her with beer before sexually assaulting her.[2] The complainant's mother testified about the complainant's outcry statement, and she and the complainant's younger sister testified about the circumstances surrounding the offenses and the offenses' aftermath. The investigating police detective testified that Garcia had been 47 years old at the time of the offenses.

A sexual assault nurse examiner testified that she had performed the complainant's sexual assault exam within 96 hours of the assault and that during the exam, the complainant had recounted the elements of each offense.[3] The nurse documented the complainant's physical condition—which included bruises on her

[2]The use of alcohol was an element of the aggravated-sexual-assault offenses. *See* Tex. Penal Code Ann. § 22.021(a)(2)(A)(vi).

[3]The nurse's testimony was detailed. To protect the complainant's privacy, because Garcia does not challenge the sufficiency of the evidence to support his convictions, we have opted not to set out in full the details of the nurse's testimony or that of the other witnesses, including the forensic interviewer, who testified that the complainant described acts of sexual abuse to her.

right thigh and redness and tenderness in her genital area—and took swabs of the complainant's genitals. Garcia's DNA was found on the swabs taken by the nurse.

Neither party addressed parole or good-conduct time during the guilt–innocence closing arguments.

### 3. Punishment phase

After the jury found Garcia guilty of all four counts, at the beginning of the punishment phase, Garcia pleaded "not true" to the sex-offender notice. The State moved to re-admit all the guilt–innocence evidence, the trial court did so, and then the State rested. Garcia put on no punishment evidence. Neither party objected to the charge.

During the punishment closing arguments, the State opted for rebuttal only, allowing Garcia's counsel to go first. During his closing argument, Garcia's counsel focused on the sex-offender notice and argued that the fingerprint testimony was the only link between Garcia and the 2003 judgment and sentence.

The prosecutor responded that the 2003 judgment and sentence had not only the same fingerprints but also the same date of birth and full name, identifying Garcia as having previously been convicted of indecency with a child. She argued, "[T]he law in our state is that when you're on your second [sex offense] conviction for abusing a child, the only possible sentence is life," and told the jury that if it found the repeat-offender allegation true, "the minute you believe that, and that has been

overwhelmingly proven true, then . . . you sentence him to life." Neither party addressed the erroneous good-conduct time instruction during closing arguments.

During punishment deliberations, the jury sent out a note asking to see the fingerprints. Seven minutes later, the jury announced that it had found the sex-offender notice "true" and announced Garcia's life sentences.

**D. Analysis**

Garcia contends that the good-conduct-time reference "fairly raises the implication that [he] could be released from confinement after a shorter period of incarceration than that which is actually possible under the applicable statutes" and that such an inference inherently prejudiced him because another jury could have found the repeat offender paragraph to be "not true," reducing his potential incarceration exposure. He further argues, "Although it can't be concretely determined what caused the jury to impose the mandatory life sentences, the fear, belief or concern that [Garcia] would somehow be released from prison sooner than anticipated due to receiving credit for good time cannot be discounted."

The State responds that because a life sentence was mandatory for each of the counts if the jury found the repeat-offender allegation true, the improper good-conduct-time instruction had no effect on Garcia's sentence, particularly because it also contained the correct instruction not to consider how it or parole law applied to him. The State also asserts that Garcia has failed to explain how another jury would

reconsider his sentence or any basis for a second jury's reaching a different conclusion about his repeat-offender status—the only contested punishment issue.

Viewing the punishment charge as a whole, the jury was instructed that no one could predict how parole and good-conduct time might be applied to Garcia and that it was not to consider the extent to which they might be applied to him, and we presume that the jury followed this instruction. *See Igo*, 210 S.W.3d at 647 ("[T]he parole instruction contained the standard curative language admonishing the jury not to consider the extent to which the parole law might be applied to the defendant.").

Further, the record does not reflect that the jury failed to deliberate and decide the case based on the charge's curative instructions because they did not send out any notes during punishment deliberations regarding parole or good-conduct credit. *See Luquis v. State*, 72 S.W.3d 355, 360 (Tex. Crim. App. 2002) (stating that the final instructions "clearly warn the jury that neither they, nor anyone else, can accurately predict how the concepts of 'good conduct time' or parole might be applied to any particular person and thus they may not consider how those concepts might apply to the defendant"). Instead, the jury's sole request during punishment pertained to the fingerprint evidence used to identify Garcia's previous sex-offender conviction.

Furthermore, the state of the punishment evidence did not make it more likely that the good-conduct instruction harmed Garcia because the parties' focus during punishment was whether he was the same person identified in the repeat-offender notice and the 2003 Dallas County judgment, for which a "true" finding would result

13

in a significantly harsher punishment range. Neither the prosecutor nor the defense addressed good-conduct time during any portion of the trial.

Finally, the jury found the repeat-offender notice "true," making irrelevant the charge's references to "good-conduct" time based on his automatic sentences in light of that finding. And Garcia's arguments that the jury found the enhancement "true" to prevent his early release on good-conduct time and that a different jury might not have found the enhancement allegation "true" present only speculation. *See Ramirez*, 2024 WL 190723, at *3. Accordingly, we cannot conclude on this record that Garcia has shown that he was egregiously harmed, and we overrule his sole point.

### III. Conclusion

Having overruled Garcia's sole point, we affirm the trial court's judgment.

/s/ Wade Birdwell

Wade Birdwell
Justice

Publish

Delivered: January 23, 2025