**REVERSE and REMAND and Opinion Filed June 25, 2024**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

_____

**No. 05-23-00316-CR**
_____

**JORDAN SHAUN RODGERS, Appellant**
**V.**
**THE STATE OF TEXAS, Appellee**

**On Appeal from the 195th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. F22-00524**

## MEMORANDUM OPINION

Before Justices Goldstein, Smith, and Garcia
Opinion by Justice Garcia

Appellant was convicted under the drive-by subsection of the aggravated assault statute and a jury assessed punishment at twenty-four years in prison. In six issues, he now argues (i) the jury charge was erroneous because it did not define "motor vehicle," or "intentional" and should not have included the word "solicits" in the law of the parties definition, (ii) the evidence is insufficient to support the conviction because there was no evidence that the car used in the shooting was a "motor vehicle" as defined by statute, (iii) the judge caused egregious harm when he explained "reasonable doubt" during voir dire, and (iv) the judgment is erroneous because it fails to give appellant credit for time served before trial.

As discussed below, we conclude the evidence is sufficient to establish that the Toyota Avalon car used in the drive-by shooting was a motor vehicle, and the evidence is sufficient to support the inclusion of the solicitation mode of party-liability in the charge. Further, appellant was not egregiously harmed by the absence of the complained-of definitions in the charge. Because appellant's counsel adopted the trial judge's reasonable doubt explanation, appellant is estopped to complain about the explanation on appeal. We further conclude that while the record reflects that appellant is entitled to pre-sentence time credit, it does not include sufficient information to calculate the amount of credit to be awarded. Accordingly, we reverse and remand this matter to the trial court for a determination of the amount of back time credit and for reformation of the judgment in accordance with that determination. In all other respects, the judgment is affirmed.

## I. BACKGROUND

On October 31 2019, a group of teenagers mistakenly believed that seventy-nine year old Gloria Jean Roque's house was the home of Tommy Gouge, a local gang member, and orchestrated a drive-by shooting. Roque, who was relaxing on the couch by her front window, was stricken by bullets and died. The group was later identified as appellant, and his acquaintances DA, RC, and KG.

Appellant was arrested. A juvenile court waived jurisdiction, certified appellant to be tried as an adult, and transferred the case to adult court. Appellant

was charged under the drive-by subsection of the aggravated assault statute. *See* TEX. PENAL CODE ANN. § 22.02(b)(3).

The case was tried to a jury. The evidence at trial established that the drive-by was appellant's idea. Appellant was in a gang, Gouge was in a neighboring gang, and appellant harbored significant animosity towards Gouge. Appellant requested information on Gouge, asking for sightings in Pleasant Grove and any addresses where he was known to stay in South Dallas. KG was Gouge's ex-girlfriend, and appellant enlisted her help and that of her new boyfriend DA, who each also disliked Gouge. Appellant pestered KG for Gouge's address throughout the month of October.

While the various beefs stewed, Gouge filmed a video threatening DA. KG posted the video, with her own commentary, to Instagram. Half an hour later, appellant direct-messaged KG, "He's talking all that noise. Wait until we find out where he stay."

Then, during an argument with appellant via Instagram direct messages, Gouge proposed that they "fight it out" or "shoot it out" on a particular street in South Dallas. Appellant forwarded a screenshot of the message to KG, and KG and DA drove up and down that street looking for Gouge. KG noticed Roque's car in her driveway and mistook it for Gouge's new girlfriend's car. Believing that they had found Gouge's residence, she reported back to appellant.

On October 30th, appellant decided Halloween would be the day to move on Gouge. Appellant declared it "purge day" and said he was going to walk if he had to.

Around 11:00 a.m. on Halloween, appellant informed DA that he had a gun. DA said that he would try to get something that night, to which appellant responded, "bet and get bullets" for "stainin[g] shi[t]." DA had already bought a fresh box of nine-millimeter ammunition the night before. DA told appellant he would be with an even younger minor named RC. Appellant told DA to be ready to "skoop" at 6:30 p.m.[1]

Transportation became an issue as the evening approached. At 5:44 p.m., appellant asked DA where he was, and DA told him he was at home. Appellant asked DA what time he would be coming to Pleasant Grove, and DA said he did not know because his mother was not going to drive him. Appellant told DA to tell his parents he was going to a party, and said they were "lame" if they were not going to move on Gouge that night. DA reassured appellant that he would do something that night if he had to do it all by himself, and appellant replied, "Me too."

DA later messaged a group that included appellant and asked if they were going to pick him up. Appellant re-assured DA that they were "for real," but explained that he could not pick him up because he himself did not have a ride.

---

[1] Trial testimony described "skoop" as meaning to pick someone up. Apparently, there was some confusion as to who was going to skoop whom.

Appellant told DA to try to convince his mother or RC's mother to drive them to him.

Meanwhile, KG was getting bored working the drive-through at Taco Bell. She went "Live" on Instagram and appellant reached out to her. Shortly thereafter, appellant showed up at Taco Bell with DA and RC in tow. KG gave them her keys so they could sit in her car, a Toyota Avalon, and turn on the heater until the end of her shift.

When KG's shift ended at around 10:00 p.m., the group left the Taco Bell to fill the car up with gas. According to KG, when she filled up gas, they still were not sure what they were going to do. After pumping her gas, she got in the car and asked, "What's the play?," and appellant suggested they "slide on" Gouge, meaning drive by and shoot at his house. DA didn't want to go through with the drive-by, but appellant called him a "pussy" and he relented. KG was also hesitant, but she decided to do it since they were all already in the car. From KG's perspective, the commitment to the drive-by was made during this five-minute conversation at the gas station.

RC and appellant switched seats, which put RC in the front passenger seat and appellant in the back with DA. Appellant and DA each had a gun, and RC did not. KG then drove the group to Roque's street.  KG circled the block a couple of times, and on the third lap she slowed down "[s]o they could shoot up the house."

The house was on the driver's side of the street. According to KG, appellant and DA were shooting from the back seat, with appellant shooting out of the driver's side window and DA shooting out of the sunroof.

Appellant did not deny that he was in KG's car for the drive-by shooting. But his counsel argued that he could not be one of the shooters because he was sitting in the front passenger seat and would not have shot across the driver. Further, the defense argued appellant was not responsible as a party because KG and DA would have completed the drive-by with or without him.

The jury was charged on the law of the parties and found appellant guilty of the charged offense. After a punishment hearing, the jury assessed punishment at twenty-four years in prison. This timely appeal followed.

## II. ANALYSIS

### A. Evidentiary Sufficiency

Appellant's first issue challenges the sufficiency of the evidence that he was "in a motor vehicle" as defined by the applicable section of the Transportation Code. TEX. TRANSP. CODE ANN. §501.002. According to appellant, because there was no evidence the offense occurred in a motor vehicle, his punishment should have been assessed as second-degree rather than first-degree felony.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010). Under the *Jackson* standard, we review

all the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Arbanas v. State*, No. 05-14-01376-CR, 2016 WL 1615592, at \*5 (Tex. App.—Dallas Apr. 20, 2016, pet. ref'd) (mem. op., not designated for publication) (citing *Jackson*, 443 U.S. at 319); *Lucio v. State*, 351 S.W.3d 878, 894 (Tex. Crim. App. 2011).

When conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. *See* TEX. CODE CRIM. PROC. ANN. art. 38.04; *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating

circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

To prove aggravated assault, the State had to establish: (a) appellant committed an assault as defined in § 22.01 [of the Penal Code] and: (1) caused serious bodily injury to another, including the person's spouse; or (2) used or exhibited a deadly weapon during the commission of the assault. TEX. PENAL CODE ANN. §22.02(a). Aggravated assault is a second-degree felony. *See id*. § 22.02(b). But the offense becomes a first-degree felony if committed while in a motor vehicle, as defined by Section 501.002 of the Transportation Code, and the actor: (A) knowingly discharges a firearm at or in the direction of a habitation, building, or vehicle; (B) is reckless as to whether the habitation, building, or vehicle is occupied; and (C) in discharging the firearm, causes serious bodily injury to any person. *See* TEX. PENAL CODE ANN. § 22.02(b)(3)(A)-(C)). Appellant was charged with the first-degree felony.

Appellant maintains there is no evidence the offense was committed while in a motor vehicle. Section 501.002 of the Transportation Code defines "motor vehicle" as:

(A) any motor driven or propelled vehicle required to be registered under the laws of this state;

(B) a trailer or semitrailer, other than manufactured housing, that has a gross vehicle weight that exceeds 4,000 pounds;

(C) a travel trailer;

(D) an off-highway vehicle, as defined by Section 551A.001; or

(E) a motorcycle or moped that is not required to be registered under the laws of this state.

TEX. TRANSP. CODE ANN. § 501.002(17)(A)-(E).

Appellant's argument is premised on the subsection (A) definition of motor vehicle: "Any motor driven or propelled vehicle required to be registered under the laws of this state." *Id*. §501.002(17)(A). As appellant acknowledges, there is no is doubt that the Toyota Avalon was a car, and thus a "motor driven or propelled vehicle." Nonetheless, appellant contends the State was also required to prove the car was "required to be registered" in this state. On this record, we find the argument unpersuasive.

A jury may draw reasonable inferences from the evidence. *See Hooper*, 214 S.W.3d at 16–17. In drawing inferences, the jury "may use common sense and apply common knowledge, observation, and experience gained in ordinary affairs." *Acosta v. State,* 429 S.W.3d 621, 625 (Tex. Crim. App. 2014). The question is whether the inferences necessary to find the elements of the offense are reasonable based on the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict. *Hooper*, 214 S.W.3d at 16–17.

The general rule for cars is that registration is required. *Id*. § 502.040. Not more than 30 days after purchasing a vehicle or becoming a resident of the state, the owner of a self-propelled vehicle must apply for registration of the vehicle for each registration year in which the vehicle is used or will be used on a public highway. *Id.* at (a)(1); TEX. TRANSP. CODE ANN. § 502.001(25). A registration year is twelve consecutive months, and registrants are issued a registration receipt and an "insignia" that is valid until the expiration of the registration year. TEX. TRANSP. CODE ANN § 502.044. Appellant provides no authority, from the Transportation Code, or otherwise, that there are any vehicles categorized as cars to be driven on public roads that are exempt from the registration requirements.

Notwithstanding the technical mechanics of the Transportation Code, Texas residents have common knowledge, based on ordinary life experience, that cars must be registered to be lawfully driven on public roads. The jury was entitled to draw on this common knowledge and experience in weighing the evidence to determine the facts of this case. That evidence established that KG was driving a 2014 Toyota Avalon—a car—on public roads. She used the car for transportation to her place of employment. She filled the car up with gas. And she drove the car to Roque's street, first for reconnaissance and then for the drive-by shooting.

Moreover, the car's status as a motor vehicle was uncontested. There was no evidence to suggest that the vehicle was not required to be registered. No evidence identified the car as unique or somehow exempt from the commonly known

registration requirements. There was no indication that KG had recently purchased the car or had not resided in this state for thirty days. From these facts, the jury could reasonably infer that KG's car was a motor vehicle as defined by the statute. We defer to the jury's resolution of this fact. *See Murray v. State*, 457 S.W.3d 446, 449–49 (Tex. Crim. App. 2015).

In reaching this conclusion, we note that "motor vehicle" has several definitions in the Transportation Code. Chapter 502, the chapter pertaining to vehicle registration, defines a motor vehicle as "a vehicle that is self-propelled." TEX. TRANSP. CODE ANN. § 502.001(25). The aggravated assault statute, however, does not use this definition. Instead, it incorporates the motor vehicle definition from the Transportation Code chapter pertaining to certificates of title. *Id*. §§ 501.001, 002(17)(A).

Within the Penal Code, the statutory provisions sometimes define "vehicle," or "motor vehicle" in the body of the statute. *See, e.g*., TEX. PENAL CODE ANN. §32.34 (motor vehicle means "a device in, on, or by which a person or property is or may be transported . . . ."). Other sections of the Penal Code incorporate different definitions from the Transportation Code, none of which describe a motor vehicle as one that is "required to be registered in this state." *See, e.g*., TEX. PENAL CODE ANN. §§ 38.04(c)(1) (incorporating definition from TEX. TRANSP. CODE ANN. 541.201); TEX. PENAL CODE ANN. §31.11 (same). Of all these definitions, the aggravated assault statute at issue here is the only statute in the Penal Code that utilizes the

–11–

section 501.002 definition requiring registration. *Compare*, TEX. PENAL CODE ANN. §§ 22.05, 23.34(2), 28.01(4), 30.01(3), 31.11, 32.34, 38.04(c)(1) *with* TEX. PENAL CODE ANN. § 22.02(b)(3).

There is no explanation as to why the Legislature decided to apply the motor vehicle definition pertaining to certificates of title (providing the vehicle must be required to be registered in this state) to drive-by shootings.[2] But we cannot conclude that in so doing, the Legislature intended to foreclose a conviction under the drive-by shooting statute unless there is direct evidence that a vehicle used for the crime was required to be registered, particularly when the issue is uncontested. *See Wood v. State*, ___ S.W.3d___, 2024 WL 2306277, at *2 (Tex. Crim. App. 2024) (courts interpret statute according to its plain meaning unless plain meaning leads to absurd results). Appellant has provided no authority to suggest otherwise. We resolve appellant's first issue against him.

## B.    Charge Error

Appellant's second, third, and fourth issues argue the charge was erroneous. Reviewing claims of charge error is a two-step process. *Campbell v. State*, 664 S.W.3d 240, 245 (Tex. Crim. App. 2022) (citing *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005)). First, we must determine whether error exists. *Id.* Second,

---

[2] Indeed, use of the §501.001 definition in the statute raises many interesting questions about its application. For example, can a defendant be charged under the statute if the self-propelled vehicle was purchased within thirty days? Does the statute apply when a vehicle is driven by an individual from another state who has recently arrived in Texas?

if there is error, we must decide whether the appellant was harmed and if the harm is sufficient to warrant reversal. *Cyr v. State*, 665 S.W.3d 551, 556 (Tex. Crim. App. 2022) (citing *Wooten v. State*, 400 S.W.3d 601, 606 (Tex. Crim. App. 2013)).

The purpose of the trial court's charge "is to inform the jury of the applicable law and guide them in its application to the case." *Delgado v. State*, 235 S.W.3d 244, 249 (Tex. Crim. App. 2007) (quoting *Hutch v. State*, 922 S.W.2d 166, 170 (Tex. Crim. App. 1996)). Charge error stems from the denial of a defendant's right to have the trial court provide the jury with instructions that correctly set forth the "law applicable to the case." *Bell v. State*, 635 S.W.3d 641, 645 (Tex. Crim. App. 2021). Because the trial court is obligated to correctly instruct the jury on the law applicable to the case, it is ultimately responsible for the accuracy of its charge and the accompanying instructions. *Mendez v. State*, 545 S.W.3d 548, 552 (Tex. Crim. App. 2018) (citing *Delgado*, 235 S.W.3d at 249). All alleged jury-charge error must be considered on appellate review regardless of whether it was preserved in the trial court. *Kirsch v. State*, 357 S.W.3d 645, 649 (Tex. Crim. App. 2012). Therefore, when the charge is inaccurate, the trial court errs, and the error is subject to the appropriate harm analysis. *See Bell*, 635 S.W.3d at 645.

### 1. Defining "Motor Vehicle"

Appellant argues the jury charge was erroneous because it failed to define "motor vehicle." According to appellant, the absence of a definition deprived the

jury of an opportunity to find that KG's Toyota Avalon was not required to be registered in this state.

The Code of Criminal Procedure requires that jury instructions be limited to the law of the case. *See* TEX. CODE CRIM. PROC. ANN. art. 36.14. The law of the case includes terms that are statutorily defined. *See Green v. State*, 476 S.W.3d 440, 445 (Tex. Crim. App. 2012). Because the aggravated assault statute incorporates the definition of motor vehicle set forth in section 501.002 of the Transportation Code, the charge should have included the statutory definition.

The omission of a motor vehicle definition from the charge, however, was not raised in the court below. Therefore, we will reverse only if the trial court's error resulted egregious harm. *Alcoser v. State*, 663 S.W.3d 160, 165 (Tex. Crim. App. 2022).

The appropriate inquiry for egregious harm is fact and case specific. *Gelinas v. State*, 398 S.W.3d 703, 710 (Tex. Crim. App. 2013); *Taylor v. State*, 332 S.W.3d 483, 489 (Tex. Crim. App. 2011). Egregious harm is a difficult standard to meet. *Alcose*r, 663 S.W.3d at 165.

Errors that result in egregious harm are those "that affect the very basis of the case, deprive the defendant of a valuable right, vitally affect the defensive theory, or make a case for conviction clearly and significantly more persuasive." *Taylo*r, 332 S.W.3d at 490 (citing *Almanza*, 686 S.W.2d at 172). In examining the record to determine whether charge error has resulted in egregious harm, we consider the

–14–

actual degree of harm in light of (1) the entirety of the jury charge; (2) the state of the evidence, including the contested issues and weight of probative evidence; (3) the arguments of counsel; and (4) any other relevant information revealed by the trial record as a whole. *Id.* at 171; *Alcoser*, 663 S.W.3d at 165.

Here, notwithstanding the absence of a definition, the application paragraph addressed the "motor vehicle" element and asked the jury to find whether appellant committed the act while in a motor vehicle. Tracking the indictment, the application paragraph instructed:

> Now, if you find from the evidence beyond a reasonable doubt that on or about the 31st day of October, 2019, in Dallas County, Texas, the defendant . . . acting alone or as a party as that term has been defined, did then and there, while in a motor vehicle, and while reckless as to whether a habitation was occupied, knowingly discharge a firearm, a deadly weapon, at or in the direction of the habitation, and in discharging the firearm, the defendant caused serious bodily injury to Gloria Roque, then you will find the defendant guilty of aggravated assault, as charged in the indictment.

Thus, the jury could not find appellant guilty unless it found that the car was a motor vehicle. As we have concluded, the jury could rely on its common sense and experience to draw appropriate inferences from the evidence to make this determination.

The charge also included statutory definitions for "knowingly," and "recklessly," as applied to the underlying offense. The jury was also instructed on the law of the parties. Consequently, application paragraphs properly charged the jury on both the underlying offense and party responsibility, the key issues in the

case. Viewed as a whole, the entirety of the charge weighs only slightly in favor of harm.

As previously discussed, the evidence was sufficient for the jury to reasonably conclude that KG's car was a motor vehicle. Moreover, appellant's defense that the drive-by shooting would have occurred with or without him did not turn on whether the Toyota Avalon was required to be registered in this state. Likewise, nothing in the arguments of counsel or the remainder of the record touched on the vehicle's registration requirements. Indeed, the record reflects that no one viewed the registration requirement as germane to the main issues in the case. We therefore conclude that the court's failure to define motor vehicle did not cause appellant egregious harm. *See Alcoser*, 663 S.W.3d at 165. Appellant's second issue is resolved against him.

### 2. Defining Intent

The Penal Code provides that a person is responsible as a party if, "acting with intent to promote or assist the commission of an offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense." TEX. PENAL CODE ANN. § 7.02(a)(2). Appellant's fourth issue argues the jury charge was erroneous because it failed to define intent in this context.

Appellant failed to object to the absence of the definition. Assuming arguendo that the definition was law of the case necessitating definition, its omission was reversible only if appellant suffered egregious harm. *Chambers v. State*, 580 S.W.3d

149, 154 (Tex. Crim. App. 2019). One suffers egregious harm when the omission affects the very basis of the case, deprives the defendant of a valuable right or vitally affected a defensive theory. *Gonzalez v. State*, 610 S.W.3d 22, 27 (Tex. Crim. App. 2020). In the present case, there is no indication that the omission affected the very basis of the case or otherwise denied appellant a fair and impartial trial.

There was considerable evidence supporting a finding that appellant acted as a party to the drive-by shooting. A month before the shooting, appellant enlisted KG's assistance in locating Gouge's residence so he could "slide" on him. Moreover, appellant not only conceived of the plan, he also talked about it with KG and DA and on social media for days before travelling with the group to conduct the shooting. Under these circumstances, while the jury may not have been told what "intent" meant, they nonetheless had the requisite basis to infer that appellant's actions reflected a conscious desire or objective to promote or assist others in committing the crime. *See* TEX. PENAL CODE ANN. § 6.03(a). *See* TEX. PENAL CODE ANN. § 6.03(a) (stating that a person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result).

Appellant contends the evidence shows he wanted to shoot at the house, but did not want to shoot anyone. Therefore, appellant argues that the jury would have struggled to find that appellant acted intentionally had they been given a definition. This argument is misplaced.

Whether appellant intended to shoot anyone is immaterial in this context. The underlying offense consisted of knowingly discharging a firearm at a dwelling with reckless disregard for whether it was occupied, causing serious bodily injury. *See* TEX. PENAL CODE ANN. § 22.02(b)(3)(A)-(C). As previously noted, the charge defined "knowingly" and "recklessly." Intent was not a culpable mental state for the underlying offense. Rather, intent was pertinent to whether, as a party, appellant acted with the intent to promote or assist in the commission of the underlying offense. The charge also instructed the jury that "mere presence will not constitute one a party to an offense," further mitigating the chance the jury would find appellant responsible as a party without finding the requisite intent. Accordingly, the charge as a whole does not support a finding of harm.

While the prosecutor referenced her voir dire example of party liability again during closing argument, this example illustrated the concept of the parties having different roles in the crime, and did not suggest a meaning of "with intent" that was inconsistent with the statutory definition. Defense counsel did not argue that appellant did not intend to participate in the drive-by shooting. Instead, the main thrust of the argument was that appellant was not the shooter and the shooting would have occurred regardless of whether appellant was present. And while he argued that appellant's numerous social media posts were merely bravado, he conceded that appellant was in the car that night. The arguments of counsel do not support a finding of harm.

We have also considered the remainder of the record, and find nothing to suggest harm. Therefore, we conclude the omission of the definition from the charge did not result in egregious harm. *See Alcoser*, 663 S.W.3d at 165. Appellant's fourth issue is resolved against him.

### 3. Law of the Parties—Solicitation

A person is criminally responsible as a party to an offense if the offense is committed by her own conduct, by the conduct of another for which she is criminally responsible, or by both. TEX. PENAL CODE ANN. § 7.01(a). To establish guilt under the law of the parties, the evidence must show that, at the time of the offense, the parties were acting together, each contributing some part toward the execution of their common purpose. *Barrientos v. State*, 539 S.W.3d 482, 490 (Tex. App.—Houston [1st Dist.] 2017, no pet.).

A trial court must charge the jury fully and affirmatively on the law applicable to every issue raised by the evidence. *Bargas v. State*, 252 S.W.3d 876, 901 (Tex. App.—Houston [14th Dist.] 2008, pet. ref'd). A law-of-the-parties instruction is proper if sufficient evidence supports a jury verdict that the defendant is criminally responsible under the law of parties. *Id.*

The court's charge to the jury concerning the party liability acts tracked the applicable statutory language:

> A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which

he is criminally responsible, or by both. Each party to an offense may be charged with the commission of the offense.

A person is criminally responsible for an offense committed by the conduct of another if, acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense. Mere presence alone will not constitute one a party to an offense.

*See* TEX. PENAL CODE ANN. § 7.03 (a)(2). During the charge conference, appellant objected to this definition and requested that the term "solicits" be excluded because there was no evidence that appellant "solicited" the offense. The trial court overruled the objection. Appellant's argues the trial court erred by refusing to narrow the party liability definition as requested.

"Generally, a charge is sufficient to support a conviction on the parties theory if it instructs the jury on the law of parties in the abstract portion of the charge and the application paragraph incorporates those instructions by reference." *Vasquez v. State*, 389 S.W.3d 361, 368 (Tex. Crim. App. 2012); *Chatman v. State*, 846 S.W.2d 329, 332 (Tex. Crim. App. 1993). "However, it is error for a charge not to apply the law of parties directly to the facts when requested." *Id*. (citing *Greene v. State*, 240 S.W.3d 7, 15 (Tex. App.—Austin 2007, pet. ref'd); *see also Vasquez*, 389 S.W.3d at 368. An application paragraph that incorporates law of parties by using the words "acting alone or as a party" is considered adequate if the defendant does not request an instruction more specific to the case. *See Greene*, 240 S.W.3d at 15 (citing *Marvis v. State*, 36 S.W.3d 878, 880 (Tex. Crim. App. 2001)). But if a defendant requests "that the application paragraph refer only to those specific party-liability acts **that**

–20–

**are supported by the evidence**, then he is entitled to such a narrowing." *Vasquez*, 389 S.W.3d at 368 (emphasis added); *see also Campbell v. State*, 910 S.W.2d 475, 477 (Tex. Crim. App. 1995) ("A defendant who objects to a general reference to the law of parties in the application paragraph is entitled to increased specificity and to have the law of parties applied to the facts of the case the "statutory modes of conduct that constitute party liability" as "solicited, encouraged, directed, aided or attempted to aid."). *Id.* "The failure to narrow the specific modes of party-liability conduct when properly requested is reversible error if the defendant has suffered actual harm to his rights." *Id.*

Recognizing that the "modes for party liability are not statutorily defined," this Court has adopted dictionary definitions. *Barradas v. State*, No. 05-14-01271-CR, 2015 WL 6157169, at *5 (Tex. App.—Dallas Oct. 20, 2015, no pet.) (mem. op., not designated for publication). Solicit means "to move to action; serve as an urge or incentive to INCITE." *Id.* (citing Webster's 3rd New Int'l Dictionary 2169 (1981)) (emphasis in original). Applying that definition, there was evidence from which a reasonable jury could conclude that appellant "solicited" the offense.

In determining whether to instruct the jury on the law of the parties, courts may consider events that occurred before, during, and after the commission of the crime. *Goff v. State*, 931 S.W.2d 537, 545 (Tex. Crim. App. 1996). Here, appellant's Instagram messages indicated that he wanted to "slide" on Gouge for almost the whole month of October. He pestered KG for Gouge's address, and he asked DA to

–21–

get ammunition. He then declared that Halloween was "purge day," and when he couldn't get a ride, he contacted KG and showed up at her job. According to KG, the drive-by was appellant's idea and the decision to commit the drive-by as a group that night was made during a five-minute conversation in her car after she finished pumping gas. During that conversation, KG agreed to drive. DA got cold feet, but when appellant called him a "pussy," he agreed to participate. Thus, the jury could conclude that appellant solicited DA, KG, or both to participate in the drive-by with him that night. Because the evidence supports the inclusion of the solicitation mode of party liability, the trial court's instruction was not erroneous. Appellant's third issue is resolved against him.

## C.    Reasonable Doubt

During jury selection, the trial judge told the jurors "There is no definition of beyond a reasonable doubt, but it's what it means to you. But it is the highest burden of proof in – in – in our country, you know, so they'll talk to you a little bit more about that as well." Appellant's sixth issue argues the judge's comment caused "egregious harm."[3] We conclude appellant is estopped from raising this issue on appeal.

A defendant can be estopped on appeal by his attorney's conduct at trial, even if he did not invite the error. *See Ruffins v. State*, 666 S.W.3d 636, 643 (Tex. Crim.

---

[3] Appellant's statement of the issues also describes the comment as a due process violation.

App. 2023). "Estoppel is a flexible doctrine that takes many forms." *Deen v. State*, 509 S.W.3d 345, 348 (Tex. Crim. App. 2017). Under the more general principle of estoppel, "a party may be estopped from asserting a claim that is inconsistent with that party's prior conduct*." Arroyo v. State*, 117 S.W.3d 795, 798 (Tex. Crim. App. 2003).

For example, in *Ruffins*, the defendant's attorney stated that he was "good" with a reasonable-doubt instruction regarding accomplice witness testimony, and then complained on appeal that the instruction should have been different. *Ruffins*, 666 S.W.3d at 643. Although it could not be said that he "invited" the error since it was already in the charge, he bore some responsibility for the erroneous instruction because his attorney discussed it with the judge and said, "I'm good." *Id.* Consequently, he was estopped from complaining about the accomplice witness instruction on appeal. *Id.*

Here, when the trial judge made the complained-of comment, appellant's counsel stood silent and did not object. Then, when the prosecutor discussed a different definition of reasonable doubt, defense counsel objected, stating, "I have to object to that, Your Honor. Beyond a reasonable doubt is what it is to each of these jurors. Counsel cannot tell them what reasonable doubt is and what it is not."

When it was defense counsel's turn to elaborate on the meaning of reasonable doubt, he explained that there "was no definition" and that it could mean different

things to different jurors. He later adopted the trial court's what-it-means-to-you explanation:

> Okay. Why am I putting this up here? What I'm trying to do is get you to understand the concepts of reasonable doubt. There is no definition.
>
> The fed—federal government down the street, if you go to the federal courthouse, they have a lovely definition. It used to look just like ours. And then, the legislators said, no, it's now what it means to you, it means to you, and means to you.
>
> Under these circumstances, we need not address the propriety of the judge's comments because appellant's attorney advocated the judge's explanation in an objection and then adopted it as his own. These actions are inconsistent with appellant's current claim that the jury should have been told something different. Because his position in the trial court is inconsistent with the argument he now seeks to make, we conclude appellant is estopped from raising the issue on appeal. Appellant's sixth issue is resolved against him.

## D.    Credit for Time Served

Appellant's fifth issue argues he is entitled to credit for time served during various periods of custody and detention, and the record does not include a finding quantifying the amount of credit appellant should have been awarded. The State agrees that appellant is entitled to credit and the record does not include sufficient information for this court to reform the judgment.

A defendant is given credit on his sentence for the time that he has spent in jail for the case from the time of his arrest and confinement until his sentence by the

trial court. *See* TEX. CODE CRIM. PROC. ANN. art. 42.03 § 2(a)(1). This includes time the defendant has spent in juvenile detention prior to his sentencing as an adult. *See Ex. Parte Gomez*, 15 S.W.3d 103, 103–04 (Tex. Crim. App. 2000).

The judgment here only includes two days of back time credit. But the record indicates that appellant was in jail from "September 2021 to May 19, 2022," and "in detention" on certain days in March 2020. Although an appellate court may reform a judgment to "speak the truth" when it has the necessary information, TEX. R. APP. P. 43.2; *Asberry v. State*, 813 S.W.2d 526, 529 (Tex. App.—Dallas 1992, pet. ref'd), the absence of a finding concerning how many days credit appellant should have been awarded precludes reformation here. While the record reflects that appellant was entitled to more than two days' credit, the information is insufficient to calculate the exact amount of additional credit he should receive.

Accordingly, we conclude the record is insufficient for this Court to reform the judgment. We sustain appellant's fifth issue, and reverse and remand this matter to the trial court for a determination of the amount of back time credit required by Texas Code of Criminal Procedure article 42.03, section 2(a)(1) and for reformation of the judgment in accordance with that determination. *See Jones v. State*, No. 05-22-00570-CR, 2023 WL 3963990, at *2 (Tex. App.—Dallas June 13, 2023, no pet.) (mem. op., not designated for publication); *Largher v. State*, No. 05-14-00440-CR, 2015 WL 6781933, at *4 (Tex. App.—Dallas Nov. 6, 2015, no pet.) (mem. op., not designated for publication).

## III. CONCLUSION

We reverse and remand this matter to the trial court for a determination of the amount of back time credit required by Texas Code of Criminal Procedure article 42.03, section 2(a)(1) and for reformation of the judgment in accordance with that determination. In all other respects, the judgment is affirmed.

/Dennise Garcia/
DENNISE GARCIA
JUSTICE

Do Not Publish
TEX. R. APP. P. 47.2(b)
230316F.U05



# Court of Appeals
# Fifth District of Texas at Dallas
## JUDGMENT

JORDAN SHAUN RODGERS, Appellant

No. 05-23-00316-CR     V.

THE STATE OF TEXAS, Appellee

On Appeal from the 195th Judicial District Court, Dallas County, Texas Trial Court Cause No. F22-00524. Opinion delivered by Justice Garcia. Justices Goldstein and Smith participating.

Based on the Court's opinion of this date, the judgment of the trial court is **REVERSED** and the cause **REMANDED** for a determination of the amount of back time credit and for reformation of the judgment in accordance with that determination. In all other respects, the judgment is affirmed.

Judgment entered June 25, 2024.